NO.   93-244

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ELMER R. BALDRIDGE,

      Petitioner and Appellant,

  -vs-

BOARD OF TRUSTEES, ROSEBUD COUNTY
SCHOOL DISTRICT #19, COLSTRIP, MONTANA
and NANCY KEENAN, Superintendent of
Public Instruction,

      Respondents and Respondents.

FILED

MAR 10 1994

CLERK OF SUPREME COURT,
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         Charles F. Moses; Moses Law Firm, Billings, Montana

      For Respondents:

         Charles E. Erdmann; Erdmann Law Offices, Helena,
         Montana

Submitted on Briefs:  September 23, 1993

Decided: March 10, 1994

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from an order of the Thirteenth Judicial District Court, Yellowstone County, affirming the State Superintendent of Public Instruction's decision reversing the Acting County Superintendent's order to reinstate the Petitioner/Appellant Elmer Baldridge (Baldridge) with pay. We remand for further proceedings consistent with this opinion.

We determine that this case turns upon a single issue--whether the District Court correctly affirmed the decision of the State Superintendent reversing the decision of the County Superintendent and upholding the decision of the Board of Trustees.

Baldridge was employed by the Respondent Board of Trustees of Rosebud County School District # 19, Colstrip, Montana (Board), as a tenured teacher of the sciences. On approximately March 30, 1988, an incident occurred in Baldridge's classroom which led to a complaint by parents in the form of a written letter received by the principal of Colstrip High School, Eileen Pearce (Pearce).

The incident, referred to as the **"glove** incident," was reported in the parents' complaint letter to the principal as follows:

> At the beginning of second period Chemistry II class, March 30, 1988, the teacher, Mr. Baldridge, was looking at some lab equipment on the counter by the sink. He picked up a rubber glove, put it on his hand, raised his hand up and said to the students, **"Any** female volunteers from the audience?"

Pearce interviewed students from the class and on April 13, 1988, wrote a letter to Baldridge stating that he should be suspended with pay pending an investigation into the incident. She

also sent a copy of the letter to the district superintendent Harold Tokerud (Tokerud).

Tokerud wrote a letter to Baldridge on April 14, 1988, stating that he was being suspended with pay pending a complete investigation. Tokerud then hired Paul Stengel, a retired Superintendent of Schools at Custer County, to investigate the incident.

On April 29, 1988, Tokerud notified the Chairman of the Board of Trustees that he had suspended Baldridge with pay and had conducted an investigation into the **"glove** incident." The letter stated that:

> I find I must recommend the dismissal of Mr. Baldridge pursuant to Section 20-4-207, MCA for unfitness, incompetence, and violation of the adopted policies of the trustees.

Tokerud also listed 12 incidents, including the "glove incident," and stated that these incidents not only showed unfitness to teach and incompetence, but were also violations of § 49-z-307, MCA, § 49-3-205, MCA, Article II, Section 4 of the Montana Constitution and certain policies of the Colstrip Schools.

On May 16, 1988, a special board meeting was convened to conduct a hearing on the recommendation to terminate Baldridge. Both Baldridge and the Board were represented by counsel. Argument and evidence were presented culminating in the Board's vote to accept the district superintendent's recommendation to dismiss Baldridge.

The Board's decision was appealed to Acting County Superintendent of Schools for Rosebud County, Shirley **Barrick**

3

(Barrick) on May 24, 1988.  A hearing was held on August 22, 1988, at the Rosebud County Courthouse.  Baldridge filed a Motion to Dismiss  and a Motion for a Continuance.   The Motion for a Continuance was denied, Baldridge filed an immediate appeal to the State  Superintendent, and the hearing was recessed.

The case was remanded back to **Barrick,** and a second hearing was held on May 30, 31, and June 1, 1989.  **Barrick** issued her findings of fact, conclusions of law and order on November 16, 1989, ordering Baldridge's reinstatement with pay.  **Barrick** found errors in due process committed by the Board in handling the action.  In addition, her Conclusion of Law #2 stated that:

> [t]his Acting County Superintendent does not approve of the conduct displayed by the Petitioner on March 30, 1988 but all other accusations heard in hearing were hearsay and interpretations without any previous written documentations in personnel file or on evaluations.

The Board again appealed to the State Superintendent, Nancy **Keenan** (Keenan), who vacated Barrick's judgment and remanded the case with instructions for reconsideration.  **Barrick** was directed to consider all evidence before her and make a determination as to whether Baldridge was terminated for good cause.  **Keenan** stated that **Barrick** only considered evidence surrounding the "glove incident," and did not assess the credibility of the witnesses nor did she weigh the evidence concerning the other alleged inappropriate comments and jokes testified to at the hearing. **Keenan** further directed **Barrick** to consider testimony from all students based on their own perceptions and knowledge.  Finally, **Keenan** stated that there was no evidence to show that written documentation of disciplinary measures was required by the Board

4

prior to dismissal.

In Barrick's second findings of fact, conclusions of law and order, dated April 17, 1991, she again ordered that Baldridge be reinstated with pay. She again determined that the Board violated § 20-4-207(3)(a), MCA, and did not afford Baldridge due process. This decision did not differ greatly from Barrick's first opinion, although some findings of fact and conclusions of law, none substantial, were added to the second opinion.

The Board again appealed to Keenan who reversed Barrick's order. Keenan determined that "[n]o rights of Baldridge have been prejudiced by the procedural actions." She also found that Barrick continued to ignore the directive to consider the testimony of the students derived from their personal knowledge and perceptions.

Keenan stated that the incidents cited by Tokerud did occur according to her review of the transcript, but "[i]t remained to be determined whether they were sufficient to reach a standard of good cause for dismissal." She concluded that the decision as to whether there was good cause to dismiss a teacher should be left to the officials at the local level. Here, "the Colstrip Board of Trustees, after hearing, decided that the behavior exhibited by Baldridge was not acceptable in their district." She continued, "[c]onclusions of Law #3 and #4 are arbitrary and capricious. Therefore, the decision of the acting county superintendent contains no conclusion of law which supports her decision to reverse the decision of the board of trustees. The acting county superintendent has abused her discretion."

Baldridge appealed Keenan's decision to the Thirteenth

5

Judicial District Court, which affirmed. In its finding of fact #10, the court found that "[o]n January 10, 1992, the State Superintendent found that 'good cause' existed for the termination of Baldridge and reversed the County Superintendent's decision." It further determined that a review of the whole record demonstrated that the incidents at issue did occur. The court then made the following conclusions of law which apply to the present discussion:

> . . .
> 2. This Court's role in reviewing an administrative decision is to review the whole record to determine if the administrative findings were clearly erroneous or if the County and/or the State Superintendent's Conclusions of Law constitute an abuse of discretion. Section 2-4-704(2), MCA, Booth v. Argenbright, 225 Mont. 272, 731 P.2d 1318 (1987); Harris v. Trustees, 241Mont. 274, 786 P.2d 1164 (19901.
> 3. In reviewing the whole record, it is evident that the State Superintendent's findings, that the School Board followed the proper procedure to terminate Baldridge, is not clearly erroneous, arbitrary or capricious. In fact, there is substantial evidence in the record to support these findings. At all stages in these proceedings, Baldridqe has been afforded substantial due process and hence the alleged procedural errors are immaterial as both the School Board and the District Superintendent had the power to proceed and there is no violation of Baldridge's due process guarantees.
> 4. The State Superintendent found that the County Superintendent's conclusions 3 and 4 were arbitrary and capricious and therefore constituted an abuse of discretion. She further found that without these conclusions the decision and order of the County Superintendent must be reversed. These findings are supported by substantial evidence in the record.
> 5. Neither the State Superintendent nor this Court has substituted their judgment for that of the County Superintendent as to fact, but has reviewed the whole record and determined that the administrative, findings were "clearly erroneous."

Finally, the court concluded "that the decision of the State Superintendent of Public Instruction in this cause is, AFFIRMED and

that the decision of the board of trustees is, UPHELD." This decision is the subject of the instant appeal.

In Throssel v. Board of Trustees (1991), 248 Mont. 392, 396, 812 P.2d 767, 769, we set forth our standard of review for contested cases involving teacher dismissals as follows:

> Our function as an appellate court reviewing an administrative decision is not to substitute our judgment for that of the County [or State] Superintendent but rather to review the whole record to determine if the administrative findings are clearly erroneous or if the County Superintendent's [or State Superintendent's] conclusions of law constitute an abuse of discretion.

The proper standard of review for administrative findings of fact is, indeed, to determine whether they are clearly erroneous, but in Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 803 P.2d 601, we correctly determined that our standard of review for agency conclusions of law would be whether the agency's interpretation of the law was correct. We stated that "[t]he reasoning for simply determining if the [agency's] conclusions are correct is that no discretion is involved when a tribunal arrives at a conclusion of law--the tribunal either correctly or incorrectly applies the law." Steer, Inc., 803 P.2d at 603. We hereby clarify Throssel and will apply the Steer, Inc. standard to our review of conclusions of law in contested cases between school districts and teachers.

## INTRODUCTION

As stated above, this case turns on a single issue--whether the District Court correctly affirmed the decision of the State Superintendent reversing the decision of the County Superintendent and upholding the decision of the Board of Trustees. This review

7

must involve a discussion of the State Superintendent's review and her ultimate decision as well as the County Superintendent's decision. Having carefully reviewed the record and applied the proper standard of review, we conclude: first, the District Court erred in affirming Keenan's decision; second, Keenan also erred when she substituted her own judgment for that of Barrick in drafting her decision: and third, Barrick erred when she did not follow the remand instructions from Keenan's decision of September 26, 1990 wherein Keenan vacated Barrick's first decision because the county superintendent's findings of fact were not "sufficiently certain to enable [Keenan] to ascertain with reasonable certainty the factual basis and legal principle upon which the County Superintendent acted." Accordingly, we remand this case to the District Court with instructions to remand the case to the State Superintendent. The State Superintendent must then remand the case to the County Superintendent with directions that she must carefully consider this case and draft findings of fact, conclusions of law and an order as mandated in § 2-4-623, MCA, and Rule 10.6.119, ARM. We now discuss the various levels of review and decision-making presented here and define the appropriate parameters for each decision issued.

DISCUSSION

I THE COUNTY SUPERINTENDENT'S (Barrick's) ORDER

A county superintendent's review of the trustees' decision to terminate a teacher must fall within the requirements set by § 2-4-623, MCA, part of the Montana Administrative Procedure Act. Section 2-4-623(1), (2) and (3), MCA, provides that:

8

(1) A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

(2) Findings of facts shall be based exclusively on the evidence and on matters officially noticed.

(3) Each conclusion of law shall be supported by authority or by a reasoned opinion.

However, in the instant case, Barrick's decision does not follow the requirements of § 2-4-623, MCA. Keenan, in her decision on appeal, states that Barrick, upon remand, did not comply with the mandate of Rule 10.6.119, ARM, (which follows § 2-4-623, MCA,) to issue "findings of fact accompanied by a concise and explicit statement of the underlying facts supporting the findings based exclusively on the evidence and supporting authority or reasoned opinion for each conclusion of law." We agree.

Several of Barrick's findings of fact are no more than conclusory statements, not supported by a concise and explicit statement of the underlying facts, as required by rule and statute. None of her conclusions of law are supported by authority or reasoned opinion. Clearly, the County Superintendent did not follow the proper statutory or administrative requirements and did not fulfill her responsibility to produce a well-reasoned final order, citing specific facts to support her conclusions of law. It is impossible to assess whether she erred in concluding that the Trustees did not follow due process in suspending and dismissing Baldridge and that Baldridge should have been reinstated in his teaching position, because she did not support her conclusions of law with authority or reasoned opinion based upon specific facts.

9

We do not comment upon whether due process was followed by the Board nor do we pass judgment on whether Baldridge should have been terminated. We merely hold that the County Superintendent did not comply with the appropriate statutory and administrative requirements in writing her opinion. She did not follow Keenan's instructions on remand. Barrick's second opinion is no better than her first. The opinion is therefore invalid.

## II THE STATE SUPERINTENDENT'S (Keenan's) DECISION

The state superintendent's review of a county superintendent's decision must be conducted pursuant to Rule 10.6.125, ARM. Rule 10.6.125, ARM, is almost identical to § 2-4-704, MCA, which establishes the standard of review for district courts. Rule 10.6.125, ARM, provides:

<u>10.6.125 APPELLATE PROCEDURE - STANDARD OF REVIEW</u>

(1) The state superintendent of public instruction shall be subject to the standard of review as set forth below and shall be confined to the record established at the factfinding hearing.
(2) In cases of alleged irregularities in procedure before the county superintendent not shown on the record, proof thereof may be taken by the state superintendent.
(3) The state superintendent, at his/her discretion or upon request, may hear oral arguments and receive written briefs.
(4) The state superintendent may not substitute his/her judgment for that of the county superintendent as to the weight of the evidence on questions of fact. The state superintendent may affirm the decision of the county superintendent or remand the case for further proceedings or refuse to accept the appeal on the grounds that the state superintendent fails to retain proper jurisdiction on the matter. The state superintendent may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the findings of fact, conclusions of law and order are:
. .
(e) 'clearly erroneous in view of the reliable, probative and substantial evidence on the whole record:
(f) arbitrary or capricious or characterized by

10

abuse of discretion or clearly unwarranted exercise of discretion;

   (g) affected because findings of fact upon issues essential to the decision were not made although requested.

Xeenan erred in reversing Barrick's opinion, not because **Barrick** was correct in her conclusions, but because **Barrick** failed to follow statutory and administrative mandate in drafting her decision.  Basically, **Keenan** could not review **Barrick's** decision in accordance with **the** requirements of Rule 10.6.125, ARM, because Barrick's decision was itself so deficient.  **Keenan** should have again remanded to **Barrick.**

However, instead of remanding, **Keenan,** herself, determined that the Board substantially complied with due process and that "[n]o rights of Baldridge . . . [were] . . . prejudiced by the procedural actions."  **Keenan** also concluded that **Barrick** abused her discretion because her decision contained no conclusions of law which would support her decision to reverse the Board of Trustees decision to terminate Baldridge.

In drawing the conclusions above, **Keenan** substituted her judgment for that of **Barrick.**  Rule **10.6.125,** ARM, provides that "[t]he state superintendent may not substitute his/her judgment for that of the county superintendent as to the weight of the evidence on questions of fact."  Beaverhead Cty. High Sch. D. **(1989),** 236 Mont. 532, 534-535, 771 **P.2d** 137, 138.  See also Frazer School Dist. No. 2 v. Flynn **(1987),** 225 Mont. 299, 302, 732 **P.2d** 409, 411. **Keenan** found Bar-rick's findings of fact to be inadequate so she determined independently that the Board followed due process when it terminated Baldridge and that Baldridge should not be

11

reinstated. **Keenan** could not have arrived at her conclusions without substituting her judgment as the initial finder of fact for that of **Barrick,** in violation of Rule 10.6.119, ARM and § 2-4-623, MCA. As **Keenan** herself acknowledged, Barrick's findings of fact were not comprehensive enough for review; essentially, Barrick's decision was non-reviewable because she did not fully comply with the appropriate statute and rule setting forth the requirements for a county superintendent's findings of fact and conclusions of law. **Barrick** did not comply with **Keenan's** first remand instructions.

We appreciate **Keenan's** frustration in reviewing for the second **time** on appeal, a decision that was as woefully deficient as the first. That frustration, however, must be outweighed by the necessity for each level of review to comply with the statutes and rules applicable to that level. In order for **Keenan** to comply with Rule 10.6.125, ARM, she must order **Barrick** to comply with Rule 10.6.119, ARM and § 2-4-623, MCA. **Keenan's** only proper recourse in the present case was to again remand the case to **Barrick** with instructions to draft findings of fact accompanied by a concise and explicit statement of the underlying facts supporting the findings and conclusions of law supported by authority or a reasoned opinion. The county superintendent must first do her job before the state superintendent can do hers.

III THE DISTRICT COURT DECISION

**Keenan's** decision was appealed to the Thirteenth Judicial District Court. A review by a district court of a state superintendent's decision is governed by § 2-4-704, MCA, which provides in pertinent part:

12

standards of review.    (1) The review shall be conducted by the court without a jury and shall be confined to the record.   In cases of alleged irregularities in procedure before the agency not shown in the record, proof thereof may be taken in the court.   The court, upon request, shall hear oral argument and receive written briefs.

(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.   The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

(a) the administrative findings, inferences, conclusions, or decisions are:

. .

(v) 'clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record:

(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(b) findings of fact, upon issues essential to the decision, were not made although requested.

The District Court stated in its conclusion of law #3:

In reviewing the whole record, it is evident that the State Superintendent's findings, that the School Board followed the proper procedure to terminate Baldridge, is not clearly erroneous, arbitrary or capricious.  In fact, there is substantial evidence in the record to support these findings.   At all stages in these proceedings, Baldridge has been afforded substantial due process and hence the alleged procedural errors are immaterial as both the School Board and the District Superintendent had the power to proceed and there is no violation of Baldridge's due process guarantees.

Additionally, the court's conclusion of law #4 provided as follows:

The State Superintendent found that the County Superintendent's conclusions 3 and 4 were arbitrary and capricious and therefore constituted an abuse of discretion.   She further found that without these conclusions the decision and order of the County Superintendent must be reversed.   These findings are supported by substantial evidence in the record.

The conclusions of law stated above discuss the court's review of the State Superintendent's decision.   The court determined that there was substantial evidence to support Keenan's findings and

13

that they were not clearly erroneous, arbitrary or capricious. However, as we stated recently in Trustees, Carbon County School District No. 28 v. Spivey (Mont. 1993), __ P.2d ___, ___, 50 St.Rep. 1664, 1667:

> [I]n order to review the decision of the state superintendent and ensure that she has correctly reviewed the county superintendent's decision, the district court must review the findings and conclusions of the county superintendent. The district court must decide whether the county superintendent's findings and conclusions were supported by reliable, probative and substantial evidence in the first instance in order to determine whether the state superintendent reviewed and correctly affirmed or reversed the decision of the county superintendent.

In the instant case, the District Court did not properly review Keenan's decision because it did not base its review on whether the county superintendent's findings of fact and conclusions of law were supported by reliable, probative and substantial evidence in the first instance. The district court must review the state superintendent's decision by focusing on the county superintendent's findings and conclusions to determine if they are supported by reliable, probative and substantial evidence and by then ensuring that the state superintendent's decision correctly affirmed or reversed the county superintendent. Different statutory and administrative mandates apply to the county superintendent as the initial fact-finder and to the state superintendent's level of review. The district court must ensure that the appropriate statutes and rules are complied with at each level.

When the county superintendent fails to comply with the applicable statute and rule in drafting her findings of fact,

14

conclusions of law and order, neither the state superintendent nor the district court can "review" those findings of fact, conclusions of law and order and still comply with the requirements of the rules and statutes applicable to their levels. If a "review" is conducted under such circumstances, either the state superintendent or the district court or both wind up acting as the initial fact-finder, and the whole statutory appeal process collapses like a house of cards.

If, because the county superintendent's decision is inadequate, the district court cannot conduct a meaningful review of that decision so as to determine whether the state superintendent conducted a proper review, then the district court must remand the case to the state superintendent. The state superintendent, in turn, must remand to the county superintendent with instructions to draft and issue findings of fact, conclusions of law and order in compliance with the applicable statutes and administrative rules.

In the instant case, we cannot assure Baldridge that he has received his "day in court" when Barrick did not comply with statutes and administrative rules governing her findings of fact, conclusions of law and order. Therefore, this case is remanded to the Thirteenth Judicial District Court with instructions to remand the case to the State Superintendent of Public Instruction who will remand the case to the County Superintendent, who in turn will be charged with complying with the statutes and rules applicable in drafting her decision as discussed above. The county superintendent assigned this case must provide underlying facts to

15

support the findings of fact and ensure that the conclusions of law are supported by authority or reasoned opinion.

We hold, therefore, that the District Court erred in affirming the State Superintendent's decision. In so doing, we close with an observation.

While the appeal procedure in contested cases between teachers and school districts is, obviously, determined primarily by the legislature, this case serves as a perfect example of why that procedure in Montana should be the subject of future, careful legislative scrutiny. The present process, commencing with the initial decision of the board of trustees, through de novo hearing and review by the county superintendent, through administrative review by the state superintendent, through judicial review by the district court, through final appeal to this Court, is technical, cumbersome, time-consuming, costly, frustrating and inefficient.

The differing, technical statutory and administrative requirements at the various levels are, in themselves, confusing and difficult enough to comprehend. That, however, combined with the fact that the abilities, training and experience of county superintendents and their access to legal counsel fully familiar with school law vary widely, almost assures error at some level of the appeal process. Simply put, the current procedures serve no one well--neither teachers, school boards and administrations, county and state school authorities, nor the judicial system. And, with the present move across the State to cut costs by shifting county superintendents' duties to other local government officials, an already unworkable situation will likely be made even worse.

See also Yanzick v. School **Dist.** No. 23, Etc. **(1982)**, 196 Mont. 375, 641 **P.2d** 431.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with the majority's conclusion that the State Superintendent exceeded her scope of review by making factual determinations, and that the District Court erred by affirming the decision of the State Superintendent.

I dissent from that part of the majority decision which concludes that this case should be remanded to the County Superintendent for further findings of fact and conclusions of law.

After reviewing the issues presented to the County Superintendent, I conclude that her findings were sufficient to explain her conclusion that Elmer R. Baldridge should be reinstated and would, therefore, simply reverse the District Court and order entry of judgment consistent with the County Superintendent's decision.

The only issue which the County Superintendent was called upon to decide was whether remarks which Baldridge was alleged to have made in the presence of students constituted good cause for his termination pursuant to § 20-4-207, MCA. That section provides that a teacher may be dismissed prior to the expiration of his contract for **immorality, unfitness, incompetence, or violation of the adopted policies of such trustees."

In this case, the sole basis for allegations that Baldridge acted in a way to support his termination pursuant to that statute were complaints by a group of students that he made inappropriate

18

complained about Baldridge were associated with the School Board and were not credible: and (3) Baldridge had no other blemishes on his record which justified his termination.

While the majority is critical of the technical adequacy of the County Superintendent's findings and conclusions, it should be kept in mind that the hearing process before a county superintendent was never intended to be the equivalent of a trial before a district court. Neither should county superintendents, who are not normally trained in the law, be held to the same standards of draftsmanship that we expect from district judges. The review process by a county superintendent, or in this case, an acting County Superintendent, is simply designed to provide a local, expeditious opportunity for an independent third party to resolve the frequent disputes which can arise between school boards and their employees.

our concern when reviewing a decision of a county superintendent should simply be whether the factual basis for the decision is clear and supported by the record, and whether the decision is correct or incorrect as a matter of law. After reviewing the record, I conclude that the basis for the County Superintendent's decision is clear, that her factual findings are not clearly erroneous, and that her decision was not incorrect as a matter of law.

Therefore, I would affirm her decision and remand this case to the District Court for entry of judgment consistent with the County

20

remarks or gestures in the presence of them and other students. During the course of the hearing, Baldridge either denied making the remarks and gestures, or explained that his remarks were intended to mean something other than they were interpreted to mean by the students who complained. The County Superintendent was basically called upon to resolve conflicting testimony between Baldridge and several complaining students. It is clear from the following findings that those conflicts were resolved in Baldridge's favor:

> 7. That the Petitioner was known to be "a thorn in the side" of the district superintendent and the board of trustees because he often challenged the discrimination against Native American students and because he chaired the CFA grievance committee in a number of successful complaints.

> 8. That the students who testified for the Respondent side seem to be part of a "clique" of friends, two of whom are children of school board members. This in addition to the conduct of the daughter of the complaining parents seems to make their testimony somewhat skeptical.

> 9. That the Petitioner has an excellent reputation as a teacher and has had only one negatory comment on an evaluation which stated that he should be more "tactful in his correspondence with the superintendent."

It is clear from these findings that the County Superintendent found insufficient credible evidence to find or conclude that there was "good cause" for Baldridge's termination.

While the findings and conclusions are not as comprehensive as they could be, the points they make are clear: (1) the School Board had an ax to grind with Baldridge; (2) the students who

19

Superintendent's decision that Baldridge should be reinstated to his position.

_____
Justice

21

March 10, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Charles F. Moses'
MOSES LAW FIRM
P.O. Box 2533
Billings, MT 59103

Charles E. Erdmann
ERDMANN LAW OFFICES
P.O. Box 5418
Helena, MT 59604

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy