NO. 94-347

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MATTER OF KALFELL RANCH, INC.,
a Corporation

PRAIRIE COUNTY COOPERATIVE
STATE GRAZING DISTRICT,

        Petitioner, Appellant
           and Cross-Respondent,

   -vs-

KALFELL RANCH, INC., a Corporation,

       Respondent, Respondent
          and Cross-Appellant.

**FILED**

DEC 22 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Seventh Judicial District,
              In and for the County of Prairie,
              The Honorable R.C. McDonough, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Thomas M. Monaghan; Lucas & Monaghan, Miles
          City, Montana

       For Respondent:

          Lorraine A. Schneider; Simonton, Howe &
          Schneider, Glendive, Montana

          Robert R. Throssell, Special Attorney General;
          Keller, Reynolds, Drake, Johnson & Gillespie,
          Helena, Montana (for Montana Board of Natural
          Resources and Conservation)

Submitted on Briefs: October 28, 1994

Decided: December 22, 1994

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The Prairie county Cooperative State Grazing District (District) appeals from a judgment entered by the Seventh Judicial District Court, Prairie County, affirming a decision by the Board of Natural Resources and Conservation (BNRC) which reversed, in part, a decision of the District. Kalfell Ranch, Inc. (Kalfell) cross-appeals from the court's determination that the BNRC's failure to address certain of its claims constituted an implied denial of the claims and the court's affirmance of that denial on the merits. We affirm on both the appeal and the cross-appeal.

The District raises the following issue on appeal:

Is § 76-16-414, MCA, rather than § 76-16-403, MCA, applicable in this case?

Kalfell raises the following issue on cross-appeal:

Whether the District Court erred in determining that, by failing to address claims raised by Kalfell, the BNRC in effect denied them and in denying them on the merits?

FACTUAL AND PROCEDURAL BACKGROUND

The District is a cooperative state grazing district authorized and organized under Title 76, Chapter 16, of the Montana Code Annotated, known as the Montana Grass Conservation Act (Act). It was organized in the 1930s and has operated continuously since that time. The District includes lands owned by private entities (such as the Burlington Northern Railway or its subsidiaries); state lands (such as school trust lands); and federal lands under the jurisdiction of the Bureau of Land Management (BLM). Large portions of the lands within the District are controlled by the

2

BLM, although leased to the District.

Kalfell, a ranch corporation, is a member of the District. Members receive grazing preferences under the provisions and procedures of the Act. Grazing preferences are rights to obtain grazing permits from a state grazing district; they are measured in animal unit months (AUMs). A permit is evidence of grazing privileges granted by such a district.

Originally, most of the livestock grazing within the District was done in common pastures. Over time, particularly in the 1950s and 1960s and in large part as a result of BLM actions in administering lands under its control, individual fenced units came into being on which District members grazed their livestock. Leases of federal lands were granted in the names of the permittee and the District. Leases of state lands ultimately were in the names of the permittees. Fencing agreements were executed between the various permittees and BLM. Thus, over the years, many of the lands within the District changed from common use to individual use; a limited number of common pastures remained. Some permittees had lands within their individual pasture which consisted primarily of federal lands; others had portions of federal, state and private lands.

The lands involved in this case were privately owned by Glacier Park Company (Glacier), a subsidiary of Burlington Northern Railway, and leased by the District. Twenty-six District permittees exercised grazing preferences on the Glacier lands. In 1989, Glacier decided to sell these lands and cancelled its leases

3

with the District. The District elected not to purchase the lands. It asked Glacier to first offer the lands for sale to the permittees within whose fenced units the lands were located; if the permittee did not purchase it, the land should be offered next to a neighbor of the permittee and, finally, the land should be offered for sale to the general public.

Glacier acquiesced in the District's request. Twenty-five of the twenty-six permittees exercising grazing preferences on the Glacier lands purchased the land within their respective fenced unit. Kalfell was unable to purchase the approximately six and one-half sections of Glacier land located within its pastures. Glacier subsequently sold that land to a neighbor of Kalfell.

Because of the District's loss of the six and one-half sections of Glacier land on which 7,828 grazing preferences--out of a total of 124,890--were exercised, the District could not provide the affected permittees with sufficient land upon which to exercise the entirety of their grazing preferences. As a result, the permittees could not exercise some of their grazing preferences; Kalfell was unable to use 966 of its grazing preferences or AUMs.

The District's board of directors tendered monetary compensation to the twenty-six affected permittees, purportedly pursuant to § 76-16-414(2), MCA. The compensation per AUM was approximately $5.72, and the total compensation offered to each permittee varied, depending on the number of AUMs each could no longer use.

Twenty-five of the twenty-six affected permittees accepted the

4

District's offer of compensation.  Kalfell, which was unable to use the second highest number of AUMs, did not accept the $5,526.97 tendered by the District's board of directors.

Kalfell requested a hearing before the District.  It contended that the loss of the Glacier lands must be shared by all members of the District and not borne solely by the twenty-six directly affected members.  It argued that § 76-16-403, MCA, providing for a proportionate reduction of all members' grazing privileges, was the applicable statute and that the District's board of directors had erred in proceeding under § 76-16-414, MCA. It also alleged in pertinent part that the board of directors breached its fiduciary duty in failing to purchase the Glacier land, failed to enforce statutes and rules which prohibit competitive bidding, and failed to collect the value of, and compensate it for, improvements made to Glacier lands.

After a hearing in which testimony and exhibits were received, the District issued its Decision of Board on August 11, 1992. It determined that the board of directors had acted properly in applying § 76-16-414, MCA, and that the compensation offered to Kalfell was the appropriate remedy.  It rejected Kalfell's claims that the board of directors was obligated to purchase the Glacier (or substitute) land and to collect the value of, and compensate Kalfell for, improvements to the Glacier land.  It indirectly addressed Kalfell's claim that the board of directors failed to follow statutes and rules which prohibit competitive bidding by focusing on the undisputed fact that the transactions by which

5

Glacier disposed of its lands were private sales over which the District had no control.

Kalfell appealed to the BNRC pursuant to § 76-16-109, MCA. Pursuant to that statute, the BNRC heard oral argument but neither requested nor received additional testimony or exhibits. The BNRC's Opinion and Order reversed the District's conclusion that § 76-16-414, MCA, was applicable. The BNRC concluded that, when the District was unable to meet the needs of those holding grazing preferences because of the sale of the Glacier lands, it was obligated by § 76-16-403, MCA, to proportionately reduce all grazing preferences. The BNRC rejected Kalfell's claim that the District was required to purchase either the Glacier land or other grazing land sufficient to meet the assigned grazing preferences; it did not address Kalfell's claims relating to competitive bidding and compensation for its improvements to the Glacier land.

The District petitioned, and Kalfell cross-petitioned, for judicial review of the BNRC's Opinion and Order. The District Court upheld the BNRC's conclusion that § 76-16-403, MCA, is applicable. It further determined that the Board's failure to address Kalfell's other claims constituted an implied denial of those issues, a denial with which the court agreed on the merits. Both parties appeal from the District Court's judgment.

STANDARD OF REVIEW

Section 2-4-704, MCA, sets forth the statutory standards for judicial review of an administrative agency's decision. We have interpreted those statutory standards to mean that an agency's

6

findings of fact are subject to review' to determine whether they are clearly erroneous. GBN, Inc. v. Montana Dep't of Revenue (1991), 249 Mont. 261, 264, 815 P.2d 595, 596 (citation omitted). An agency's conclusions of law are reviewed to determine whether they are correct. GBN, Inc., 815 P.2d at 597.

We recently have clarified that, in multi-level proceedings and reviews under the Montana Administrative Procedure Act (MAPA), the "agency" decision to be scrutinized on judicial review is that of the agency which issued the initial decision. See Baldridge v. Board of Trustees (1994), 264 Mont. 199, 870 P.2d 711. Here, that agency decision is the District's Decision of Board dated August 11, 1992.

Is § 76-16-414, MCA, rather than § 76-16-403, MCA, applicable in this case?

The District contends that its original decision that § 76-16-414(2), MCA, applies to the facts and circumstances of this case was correct as a matter of law and that the BNRC and the District Court erred in applying § 76-16-403, MCA. Section 76-16-414, MCA, provides in its entirety as follows:

76-16-414. Equalization of district assets. (1) Whenever a state district shall possess reserves, the values of which are greater than its liabilities, and the state district shall determine that a part of such reserves is in excess of its reasonable needs to operate the district, such state district may refund to the permittee members their proportionate share of such reserves as determined at the last annual accounting.
(2) Whenever a state district shall possess reserves and physical assets, the values of which are greater than its liabilities, and a permittee member shall lose his grazing preference, he shall be entitled to receive his proportionate share of the value of such excess from the state district, as determined by the annual accounting of the state district. The state

7

district may set off the amount of 'any claim it may have against such former member.

(3) Whenever a new member shall receive a grazing preference, he shall, as a condition of receiving such preference, pay to the state district the value of the equitable interest in the physical assets and reserve fund which accrues to him by virtue of such membership. Such value shall be determined at the time of receiving such preference and upon the basis of the determination of value of such physical assets and reserves made at the last annual accounting.

Section 76-16-403, MCA, provides:

76-16-403. Procedure if reduction in grazing privileges necessary. If reductions in grazing privileges become necessary, operators with temporary permits will be reduced first on a proportionate basis. When the extent of reduction of privileges exceeds that of temporary permits, then the rights of operators with both dependent commensurateproperty and commensurate property shall be reduced together on a proportionate basis.

Our role in construing statutes is clear; we must "ascertain and declare what is in terms or in substance contained therein . . .;" we may not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA; Curtis v. Dist. Court of 21st Jud. Dist. (Mont. 1994), 879 P.2d 1164, 1166, 51 St.Rep. 776, 778. The intent of the legislature is to be pursued and effectuated. Section 1-2-102, MCA; Curtis, 879 P.2d at 1166; Minervino v. University of Montana (1993), 258 Mont. 493, 496, 853 P.2d 1242, 1244. We look first to the plain meaning of the words used in the statute. Stansbury v. Lin (1993), 257 Mont. 245, 249, 848 P.2d 509, 511. If the legislative intent can be determined from the plain language of the words used, we may not go further and apply other means of interpretation. Curtis, 879 P.2d at 1166 (citation omitted). It is only when the intent cannot be determined from the language of the statute that we will examine the legislative

8

history.  State ex rel. Roberts v. Public Service Com'n (1990), 242 Mont. 242, 246, 790 P.2d 489, 492 (citations omitted).

The District contends that § 76-16-414(2), MCA, is the specific remedy provided by the Montana legislature for the situation which occurred upon the District's loss of control of the Glacier lands. The District maintains that Kalfell "lost" its grazing preference and, therefore, was entitled to only a proportionate share of the District's assets, as offered by the District, pursuant to § 76-16-414(2), MCA. It cites no statutory or case authority in support of its contention that preferences were "lost;" furthermore, the plain language of § 76-16-414, MCA, does not support the District's position.

Kalfell did not "lose" any grazing preferences or permits via Glacier's sale of the lands at issue here; it merely became unable to exercise its preferences because of the District's loss of the Glacier lands. Grazing preferences--rights to obtain grazing permits--are statutory creations which are determined and distributed pursuant to statutory requirements. Sections 76-16-103(7) and 76-16-401, MCA. They can be transferred pursuant to statute. See, e.g., § 76-16-406, MCA. Grazing preferences also may be revoked pursuant to statute. Section 76-16-412, MCA. No statute provides for the evaporation, extinguishment, or loss of a grazing preference as a result of the loss of control of land by a grazing district. As a result, we reject the District's underlying premise that Kalfell lost grazing preferences upon the sale of the Glacier lands.

9

Moreover, the District's argument ignores the final sentence of § 76-16-414(2), MCA. The inclusion there of the term "such former member" clarifies that the remedy provided therein is available only when a member loses the entirety of its grazing preference(s) and, as a result, is no longer a member of the District. Notwithstanding the parties' dispute over whether Kalfell actually "lost" any of its grazing preferences, it is undisputed that Kalfell did not lose the entirety of its grazing preferences and that it remains a permittee member of the District. We conclude that the language of § 76-16-414(2), MCA, is clear, unambiguous and plain in expressing the legislature's intent; it permits of no additional interpretation by this Court. See Curtis, 879 P.2d at 1166.

In addition, reading subsection (2) in the context of the entirety of § 76-16-414, MCA, further clarifies that the legislature's purpose in enacting the statute was, as its heading denotes, to equalize a district's assets under three distinct scenarios. Subsection (1) provides the method of equalizing assets when a district determines it has reserves in excess of its reasonable needs; subsection (2) provides for equalization when a permittee member loses its grazing preference(s) altogether and, as a result, becomes a former member; and subsection (3) provides for equalization when a new member receives a grazing preference. Section 76-16-414, MCA. None of those scenarios is before us here.

Nor can we accept the District's argument that its, and members', agreements with the BLM--by which BLM lands within the

10

District were individually allotted and individual units were fenced--changed the fundamental nature of the grazing preferences assigned and managed by it pursuant to state law. In essence, the District contends that its involvement with federal agencies under the federal Taylor Grazing Act (43 U.S.C. §§ 315 et seq.) allows it to ignore or violate Montana statutes by ceding control of the District to the BLM. It is undisputed that the District was established pursuant to §§ 76-16-201 et seq., MCA. While the Act is intended to provide a means of cooperation with federal agencies involved with the Taylor Grazing Act, the District cannot exercise powers inconsistent with the Montana Act in doing so. See §§ 76-16-102 and 76-16-204(2)(f), MCA. We conclude that the District erred in concluding that § 76-16-414, MCA, is applicable to the facts before us.

Section 76-16-403, MCA, on the other hand, is clearly applicable here by its terms. There is no question but that the District's loss of control over the Glacier lands impacted on assigned grazing preferences. Some 50,000 fewer acres were available on which members could exercise their grazing preferences and the District did not purchase or, apparently, lease new lands to enable members to fully exercise their preferences. Thus, the impact on members' ability to exercise their grazing preferences resulted from the inadequacy of lands under the District's control, not from the "loss" of any grazing preferences. Under such a circumstance, "reductions in grazing privileges become necessary," as specifically contemplated in § 76-16-403, MCA. The statute

11

provides for reducing grazing privileges on a proportionate basis. We conclude that the District erred in concluding that § 76-16-403, MCA, is not applicable here.

The District also argues that application of § 76-16-403, MCA, produces an impossible result. It asserts that, because of the change in grazing characteristics in the District from large, unfenced common pastures to individual units, it could not have apportioned the "loss" of the 7,828 grazing preferences resulting from the loss of control of the Glacier lands at the time the lands were sold and cannot now apportion the 966 preferences Kalfell is unable to exercise.

The means by which the District can, or must, comply with clearly applicable statutes is not an issue before us in this case. Boiled down to its essence, the District's argument is that, because it did not seek amendments to the Act as grazing characteristics changed over the years, this Court should relieve it from a difficult situation by ignoring the rules of statutory construction regarding plain and unambiguous statutory language. Suffice it to say that we cannot alter the clear language of applicable statutes; only the legislature can do so.

Having concluded that the District erred as a matter of law in applying § 76-16-414(2), MCA, we hold that the BNRC and the District Court did not err in concluding that § 76-16-403, MCA, rather than § 76-16-414, MCA, applies in this case.

> Did the District Court err in determining that, by failing to address claims raised by Kalfell, the BNRC in effect denied them and in denying them on the merits?

12

There is no question but that procedural requirements were not strictly met in this case by either the District or the BNRC. The District's Decision of Board did not strictly comply with the requirements of § 2-4-623, MCA, which may stem from the District's unfamiliarity with conducting proceedings under the MAPA. We caution the District--and other grazing districts which may conduct such proceedings--that our willingness to overlook nondispositive irregularities in the format and content of its Decision of Board in this case, partly because Kalfell did not raise the issue, should not be interpreted to mean that we will countenance such irregularities in future cases reaching us under the Grass Conservation Act. Like all entities and proceedings to which the MAPA applies, grazing districts will be held to applicable statutory requirements.

Similarly, the BNRC did not rule on all claims appealed to it by Kalfell; these omissions, like those of the District, are not dispositive here. We encourage the BNRC, however, to more carefully review the record before it in future cases in order to properly consider and resolve all issues.

As set forth above, the decision we must scrutinize on appeal to this Court is the District's Decision of Board. In discussing this issue, then, we review the District's determinations a) rejecting Kalfell's claim that its board of directors violated a fiduciary duty in failing to purchase the Glacier lands; b) indirectly rejecting Kalfell's claim that its board of directors failed to enforce statutes and rules which prohibit competitive

13

bidding; and c) rejecting Kalfell's claim for reimbursement for improvements it made to Glacier land. Because these determinations are, in essence, conclusions of law based on a largely undisputed record, we review the District's conclusions to ascertain whether they are correct. GBN, Inc., 815 P.2d at 597.

a. Duty to Purchase

Kalfell claims that the District's board of directors had an affirmative duty to purchase the Glacier lands, or substitute land, in order to enable the District's members to exercise their grazing preferences in full. It argues that § 76-16-102, MCA, which states that one of the purposes for establishing the Act under which the District was formed is to provide for the stabilization of the livestock industry, and § 76-16-305(2), MCA, authorizing the District to purchase lands--taken together--mandate a conclusion that the District's board of directors abused its discretion and violated its fiduciary duty in failing to purchase the Glacier lands or other land in order to provide sufficient land under the District's control on which members could exercise their grazing preferences in full. We disagree.

The legislature's stated purposes in enacting the Grass Conservation Act are broad statements of guiding principles; they do not require a grazing district to take specific actions. See § 76-16-102, MCA. Section 76-16-305(2), MCA, provides that a grazing district may purchase or lease lands when necessary to comply with the purposes of the Act; the authorizing language clearly is discretionary. Nothing in the statutory framework under which the

14

District operates requires it to purchase such lands.

In addition, as discussed above, § 76-16-403, MCA, clearly contemplates the situation which arose here and provides a method for remedying a loss of land which results in the inability of members to exercise their full grazing preferences. Kalfell, having asserted the correct interpretation of § 76-16-403, MCA, in countering the District's position regarding applicability of § 76-16-414, MCA, cannot now be allowed to ignore the clear language of that statute and argue, inconsistently, that the District's board had an obligation to purchase land rather than to proportionately reduce members' grazing preferences. We hold that the District did not err in concluding that its board of directors was not required to purchase either the Glacier lands or substitute land.

We note that the BNRC did address this issue by stating in its Opinion that "Nothing in statute requires the District to purchase grazing land." Thus, on this issue, the BNRC and the District Court correctly determined, as a matter of law, that the District's rejection of this claim by Kalfell was not error.

b. Statutes and Rules Prohibiting Competitive Bidding

Kalfell claims that the District's board of directors failed to enforce both § 76-16-412(2), MCA, and the terms and conditions contained in its grazing permits by not revoking the preferences of Fluss Ranch, Inc. (Fluss), Kalfell's neighbor, based on its prohibited competitive bidding in purchasing the Glacier land within Kalfell's individual unit. The District obliquely addressed this claim by focusing on the undisputed fact that the sale of

15

Glacier's land to Fluss was a private sale over which it had no control.

Section 76-14-412(2), MCA, authorizes a grazing district to revoke preferences if a permittee violates any of the district's rules. The District's rules, printed on the grazing permits issued to its members, prohibit a permittee from entering into competitive bidding "against the district or any member thereof for the lease of grazing lands in the district which are within any member's allotment." The rules also allow the permit to be cancelled for violation of any of the rules or regulations of the District.

Taken together, § 76-14-412, MCA, and the District's rules allow revocation of preferences or cancellation of permits for rules violations by a permittee; neither requires it. Where the language of a statute is plain and unambiguous, we must give that language full effect. Curtis, 879 P.2d at 1166. Here, decisions to revoke preferences or cancel permits are entirely discretionary with the District.

Moreover, the rule prohibiting competitive bidding is inapplicable here as a matter of law. Insofar as is relevant here, the rule prohibits competitive bidding against another member for the lease of grazing lands in the District which are within the other member's allotment. Here, the sale of the Glacier land was clearly not a "lease" of that land to which the rule would apply. We hold that the District was correct as a matter of law in rejecting this claim by Kalfell.

We note that the BNRC did not address this issue. Again, we

16

encourage the BNRC to more carefully review the record and issues before it in its decision-making process. A full analysis of this issue by the BNRC could conceivably have prevented an appeal, saving the parties time and expense.

c. Improvements

Kalfell asserted at the District, the BNRC and the District Court that it was entitled to the value of improvements it made to the Glacier land and that the District was obligated, pursuant to § 76-16-410, MCA, to collect the value of such improvements from Fluss on its behalf. The District rejected this claim, concluding that the statute did not apply. The BNRC did not address this issue in considering Kalfell's appeal from the District's Decision of Board.

We note that Kalfell's presentation of this issue appears to have shifted somewhat on appeal to this Court. Kalfell now appears to assert only that it was an abuse of discretion for the District not to recover the value of the improvements "for the benefit of the District." We address the issue as it originally was raised at, and rejected by, the District.

Section 76-16-410, MCA, states that subsequent owners of land must compensate a grazing district for the value of range improvements constructed with the consent of the owner upon lands leased by the district. Kalfell's argument that, pursuant to the statute, the District was obligated to collect the value of the improvements from Fluss and pay it over to Kalfell--or add it to Kalfell's equity in the District--is totally unsupported by the

17

language of the statute. The statute speaks only to compensation of the grazing district, not to any obligation of a district to collect those funds for payment to a previous lessee.

Furthermore, the statute addresses only improvements in which a grazing district itself is involved. Here, Kalfell's own testimony was that the District was not involved in its decision to make the improvements and, indeed, that it had not made any agreement with Glacier as to ownership of the improvements in the event Glacier sold the land. We conclude that § 76-16-410, MCA, is not applicable to the facts before us and, therefore, that neither the District nor the District Court erred in rejecting Kalfell's claim based on that statute.

Affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

18

Justice William E. Hunt, Sr., specially concurring.

I concur in the result of the majority opinion, but not in all that is said therein.

_____
Justice

19