No. 00-289

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 317

302 Mont. 492

15 P.3d 888

IN THE MATTER OF KALFELL RANCH, INC.,

Petitioner and Appellant,

v.

PRAIRIE COUNTY COOPERATIVE STATE GRAZING DISTRICT,

Respondent and Respondent.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Prairie,

The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lorraine A. Schneider, Schneider, Howe and Batterman, P.C.,

Glendive, Montana

For Respondent:

A. Lance Tonn, Lucas & Tonn, P.C., Miles City, Montana

Submitted on Briefs: August 31, 2000
Decided: December 12, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Appellant, Kalfell Ranch, Inc., filed a Petition for Judicial Review in the District Court for the Seventh Judicial District in Prairie County in which Kalfell contended that the Respondent, Prairie County Cooperative State Grazing District, failed to comply with a prior decision of this Court. Kalfell sought money damages as a result of the Grazing District's assignment of grazing rights scattered throughout the District. The District Court denied relief and Kalfell now appeals. We affirm the judgment of the District Court.

¶2 Kalfell raises several issues which we restate as follows:

¶3 1. Has the Grazing District complied with the Montana Supreme Court's Decision in *Kalfell I*?

¶4. 2. Did the District Court have equitable jurisdiction to award damages in lieu of the statutory remedy provided by § 76-16-403, MCA?

¶5 3. Did the District Court err in computing damages?

## FACTUAL BACKGROUND

¶6 Most of the facts upon which the current appeal is based were previously addressed by this Court in *Prairie County Cooperative State Grazing District v. Kalfell Ranch, Inc*. (1994), 269 Mont. 117, 887 P.2d 241 (*Kalfell I*). The 1.1 million acres that make up Prairie County are divided into one mile square parcels known as sections. The mixed federal, state, and private ownership of these sections creates a checkerboard pattern of ownership. The Prairie County Cooperative State Grazing District (Grazing District) was formed in the 1930s as part of an effort to efficiently administer the checkerboard tracts throughout Prairie County. Grazing District members receive grazing preferences pursuant to the Montana Grass Conservation Act, Title 76, Chapter 16 of the Montana Code Annotated. Grazing preferences are issued to each member of the Grazing District annually. The grazing preference allows ranchers to obtain grazing permits from the Grazing District. Grazing preferences are measured in animal unit months (AUMs), which represent the amount of forage necessary to sustain a cow-calf pair for one month. The Grazing District issues grazing preferences on lands which are owned by various interests including the federal government, the State of Montana, the Grazing District itself, and other private landowners.

¶7 The land giving rise to this dispute was owned by the Glacier Park Company as a successor in interest to the Northern Pacific Railway Company. Prior to 1989, the Glacier Park Company owned approximately 50,000 acres in Prairie County. The Grazing District leased this land from Glacier Park Company pursuant to a lease which allowed for termination without cause on 60-days notice. Kalfell was one of the 26 members of the Grazing District who had grazing allotments on lands leased from the Glacier Park Company.

¶8 In 1989, Glacier Park Company decided to sell its Prairie County lands, including those leased by the Grazing District. Glacier Park Company first offered the land to the Grazing District. The Board of Directors declined to purchase the land but did convince Glacier Park Company to offer the land to the 26 Grazing District members who grazed their cattle on Glacier Park Company land. All but two of the Grazing District members purchased the land. Kalfell and Glacier Park Company could not agree on a purchase price for the land and the six and one-half sections were sold to Kalfell's neighbor.

¶9 Following the sale of Glacier Park Company land, a total of 7828 AUMs were no longer available for administration by the Grazing District. The Grazing District's Board of Directors tendered monetary compensation to the 26 affected permittees pursuant to § 76-16-414(2), MCA. The compensation per AUM was approximately $5.72, and the total compensation offered to each permittee varied, depending on the number of AUMs each could no longer use. Twenty-five of the 26 affected permittees accepted the Grazing District's offer of compensation. Kalfell, which sustained the second largest loss of AUMs, did not accept the $5526.97 tendered by the Board of Directors and the first round of litigation followed.

¶10 In *Kalfell I*, we determined that the Grazing District erred as a matter of law when it applied § 76-16-414(2), MCA. We affirmed the District Court's conclusion that § 76-16-403, MCA was the applicable statute and directed the Grazing District to comply with the requirements of this code section.*Kalfell I,* 269 Mont. at 126, 887 P.2d at 246. The Grazing District then reduced the grazing privileges of each of the 138 permittees on a proportionate basis in accordance with § 76-16-403, MCA. The Grazing District determined that each member would have to reduce its herd size to reflect the lost grazing privileges. The AUMs lost by the other members were then offered to Kalfell. However, the grazing privileges offered to Kalfell were scattered throughout the District. The Grazing District was unable to issue grazing permits for these scattered AUMs due to the federal regulatory scheme imposed by the Bureau of Land Management.

¶11 Almost two years after our decision in *Kalfell I*, counsel for Kalfell wrote a letter to the Grazing District which made the following demands:

> 1. **Recovery of Section 76-16-414(2) Payments**. Pursuant to the Supreme Court's decision on 12/22/94, the Grazing District's payment of $39,260.96 (i.e., $44,787.93 less $5,526.97) to 25 of its members in 1991 under Section 76-16-414(2), MCA was paid out in error and contrary to statutory authority. The District has an obligation to recover those sums. Demand is made that it do so.

2. **Acknowledge that the District's Attempted Compliance With Section 76-16-403, MCA is Unworkable**. Consistent with the position the District took prior to issuance of the Montana Supreme Court's decision in this matter, demand is made that the District acknowledge Section 76-16-403, MCA is not workable and is impossible to implement.

3. **Provide Alternative AUMs Based on Proportion of Allotment Lost**. While all other members of the District are enjoying use of their proportionately reduced preferences or the whole of their undiminished preferences, Kalfell does not have workable or practical access to his proportionately reduced preferences. Demand is made that the District provide alternative AUMs to Kalfell by any means at its disposal including by lease or purchase of sufficient land to satisfy its obligation under Section 76-16-403, MCA.

4. **Petition the Appropriate Forum**. Demand is made, pursuant to the District Court's 5/18/94 Judgment, that the Grazing District petition the appropriate forum for relief from its obligation under Section 76-16-403, MCA and for an alternative remedy to fulfill its obligation to Kalfell.

5. **Payment of Money Damages**. Demand is made for payment to Kalfell of damages in the sum of $225,000.00 suffered by reason of its loss of more than its proportionate reduction of AUMs from December 1989 until Kalfell is made whole and by reason of the District's misapplication of the law.

¶12 On October 4, 1996, the Grazing District issued a Notice of Contested Case Hearing. The contested case hearing was held on July 29 and 30, 1998. The Hearings Examiner issued his Findings of Fact and Conclusions of Law on August 21, 1998. The Final Order adopting the Hearings Examiner's findings was issued on September 4, 1998.

¶13 Kalfell appealed the Grazing District's decision to the Department of Natural Resources and Conservation pursuant to § 76-16-109, MCA. The Director issued a Final Decision on August 9, 1999.

¶14 Kalfell then filed a Petition for Judicial Review in the District Court for the Seventh Judicial District in Prairie County. On December 29, 1999, the Honorable Richard G. Phillips issued an Order which affirmed the previous decisions in part but ordered the Grazing District to recover the sums paid to 25 of its members. Kalfell now appeals the Grazing District's Order, which adopted the Hearings Examiner's Findings of Fact, Conclusions of Law and Proposed Order. Kalfell also appeals that part of the District Court Order which affirmed the Grazing District's Order.

## STANDARD OF REVIEW

¶15 We review the decisions of grazing districts pursuant to the Montana Administrative Procedure Act. *See* § 76-16-110, MCA. In multilevel proceedings and reviews pursuant to the Montana Administrative Procedure Act (MAPA), the "agency" decision to be scrutinized on judicial review is that of the agency which issued the initial decision. *See Baldridge v. Board of Trustees* (1994), 264 Mont. 199, 870 P.2d

711. An agency's findings of fact are reviewed to determine whether they are clearly erroneous. *GBN, Inc. v. Montana Dep't of Revenue* (1991), 249 Mont. 261, 264, 815 P.2d 595, 596. The standard of review for an administrative agency's conclusions of law is whether their interpretation of law was correct. *Leahy v. Dep't of Revenue* (1994), 266 Mont. 94, 97, 879 P.2d 653, 655.

## DISCUSSION

## ISSUE 1

¶16 Has the Grazing District complied with the Montana Supreme Court's decision in *Kalfell I*?

¶17 Kalfell points out that the Grazing District has an obligation to administer the rights of its members fairly. If the Grazing District cannot protect members' rights in the manner provided by statute, Kalfell contends that justice requires equitable intervention by the District Court. Because the scattered AUMs offered to Kalfell cannot serve as the basis for issuance of a grazing permit, Kalfell asserts that the additional grazing preferences have no practical value. Therefore, Kalfell concludes that the Grazing District erred both in determining it had complied with *Kalfell I* and that Kalfell was not entitled to damages in the subsequent action.

¶18 In this case the Hearings Examiner made detailed Findings of Fact and Conclusions of Law. The Grazing District adopted these findings in its September 4, 1998 Order. It does not appear that Kalfell contends the findings were clearly erroneous. Its argument appears to be that the law was incorrectly applied or, if correctly applied, led to inequitable results.

¶19 In *Kalfell I*, we determined that § 76-16-403, MCA was the legally applicable statute. Although the statute has been amended by the 1999 Legislature, at the relevant time it read as follows:

> **76-16-403. Procedure if reduction in grazing privileges necessary.** If reductions in grazing privileges become necessary, operators with temporary permits will be reduced first on a proportionate basis. When the extent of reduction of privileges exceeds that of temporary permits, then the rights of operators with both dependent commensurate property and commensurate property shall be reduced together on a proportionate basis.

The Grazing District and Kalfell agree that no temporary permits were in effect and therefore the first sentence of § 76-16-403, MCA is inapplicable. The second sentence requires that grazing privileges be reduced on a proportionate basis. The Hearings Examiner specifically found that the Grazing District reduced the privileges of each of its 138 members on a proportionate basis. Moreover, Kalfell does not contend that this determination by the Examiner was not supported by substantial evidence. The Grazing District clearly complied with the directive of this Court in *Kalfell I*.

¶20 Kalfell further argues that the Grazing District erred when it decided not to acquire

additional lands. Kalfell notes that § 76-16-305(2), MCA, gave the Grazing District the discretion to acquire additional forage producing lands when it lost control of the Glacier Park Company lands. However, we addressed this argument in *Kalfell I* when we decided that the acquisition of property is a matter entirely within the discretion of the Grazing District's Board of Directors. *Kalfell I*, 269 Mont. at 128, 887 P.2d at 248. Kalfell has demonstrated neither factual nor legal error in the Grazing District's Order or the underlying findings of the Hearings Examiner. Accordingly, we affirm the Grazing District's decision and the District Court Order upholding that decision.

## ISSUE 2

¶21 Did the District Court have equitable jurisdiction to award damages in lieu of the statutory remedy provided by § 76-16-403, MCA?

¶22 Kalfell contends that the Grazing District's proportionate reduction of grazing preferences was of no economic benefit and therefore seeks monetary compensation for lost grazing privileges. In essence, Kalfell suggests that for every wrong there must be a meaningful remedy. Kalfell cites *360 Ranch Corp. v. R & D Holding* (1996), 278 Mont. 487, 926 P.2d 260, for the proposition that a district court may only assert equitable jurisdiction when no statutory or legal remedy is available. However, that is not to say that there must be an equitable remedy whenever there is no statutory or legal remedy.

¶23 First, Kalfell seeks compensation for grazing privileges which do not create a legally protectable right. Section 76-16-108, MCA, defines the nature of rights granted to Grazing District members. While this section was amended by the 1999 Legislature, the previous codification stated:

> **76-16-108. Nature of rights.** (1) Preferences or rights under this chapter through the creation of the district or the issuance of permits or preferences are statutory and do not create any vested right, title, interest, or estate in or to the lands owned or controlled by the district excepting as herein provided.

The United States Supreme Court has recently interpreted the legal effect of grazing preferences in a similar fashion. *See Public Lands Council v. Babbitt* (2000), 529 U.S. 728, 120 S. Ct. 1815, 146 L. Ed. 2d 753 (grazing preferences realized pursuant to the Taylor Grazing Act do not create fixed legal rights to grazing permits).

¶24 Second, the Grazing District did nothing to harm Kalfell when, due to the loss of Glacier Park Company lands, it followed the directive of *Kalfell I* and implemented the plain terms of § 76-16-403, MCA. The Grazing District proportionately reduced the AUMs of all its members as provided by the former § 76-16-403, MCA. We agree with the District Court that it is unfortunate for Kalfell that the statutory remedy proved impractical in this case, however, the result was not caused by the wrongful conduct of any of the parties. Consequently, we conclude that the Grazing District and the District Court properly determined that an equitable award of monetary damages was inappropriate.

## ISSUE 3

¶25 Did the District Court err in computing damages?

¶26 Having determined that the District Court properly refused to award money damages, we need not address the manner in which damages were calculated.

¶27 The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART