JUSTICE GRAY
delivered the Opinion of the Court.
This case involves the 1988 dismissal by the Board of Trustees of Rosebud County School District #19, Colstrip, Montana (Board), of science teacher Elmer R. Baldridge (Baldridge). Baldridge appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, which, in essence, judicially affirmed his dismissal by the Board. We affirm the District Court.
We restate the dispositive issue on appeal as whether, given the unchallenged findings of fact before us, acting county superintendent of schools Shirley Barrick erred in concluding that Baldridge’s conduct did not constitute incompetence, unfitness or violations of Board policy under § 20-4-207, MCA (1987).
BACKGROUND
This is the second time this lengthy litigation has been before this Court. Our opinion in Baldridge v. Board of Trustees (1994), 264 Mont. 199, 870 P.2d 711 (Baldridge I), set forth at length the tortured procedural path this matter followed between the Board’s dismissal of Baldridge in 1988 and our remand, in 1994, for further proceedings. That history need not be repeated here. Suffice it to say that, in Baldridge I, we clarified the standards of review to be applied by the Montana Superintendent of Public Instruction (State Superintendent), district courts and this Court in cases involving the dismissal of a school teacher. Baldridge I, 870 P.2d at 714-18. We then remanded to the district court with instructions to remand to the State Superintendent for remand to the acting county superintendent of schools (County Superintendent) for'the purpose of entering a decision complying with applicable statutes and rules. Baldridge I, 870 P.2d at 718.
*56 On remand, County Superintendent Shirley Barrick (Barrick) entered extensive findings of fact and conclusions of law relating to the Board’s dismissal of Baldridge. Barrick found that, at the time he was terminated, Baldridge was a popular teacher of various science classes with an excellent reputation; he had excellent teaching skills and consistently received the highest possible performance evaluations. Baldridge was known to be a “thorn in the side” of the district superintendent of schools and the Board, however, because of his activist role in school matters.
In early April of 1988, high school principal Eileen Pearce (Principal Pearce) received a letter from the parents of a student in one of Baldridge’s science classes complaining about an occurrence in Baldridge’s classroom which became known as the “glove incident.” Baldridge was cleaning the lab during class and sought student assistance by placing a rubber glove on his hand, holding his hand in front of his face, palm in, and asking, “Mayl have a female volunteer?” He admitted repeating the incident in several classes that day.
After a preliminary investigation into the glove incident, Principal Pearce recommended to the district superintendent that Baldridge be suspended with pay pending a further investigation. Baldridge was suspended, an investigation took place which resulted in additional allegations of inappropriate conduct by Baldridge and, after a hearing, the Board dismissed Baldridge from his tenured teaching position on May 16, 1988. The stated reasons for the dismissal were incompetence, unfitness and violation of Board policies.
Baldridge appealed his dismissal to the County Superintendent and a hearing was held on May 30, 1989. Both the Board and Baldridge presented evidence at the hearing and a number of students testified. Testimony centered on nine instances of alleged misconduct by Baldridge, including the admitted glove incident. The County Superintendent determined the credibility of Baldridge and the other witnesses. She then found that, of the nine incidents alleged, eight of them — including the glove incident — occurred. Having found that the incidents occurred, the County Superintendent also found that Baldridge’s behavior was “inappropriate and not common place.” She made additional findings regarding each incident, to the effect that Baldridge had not intended to offend, the references he made were not intended to be sexual or phallic, and the students were not offended by Baldridge’s conduct.
In Barrick’s extensive conclusions of law, she determined that § 20-4-207, MCA (1987), authorizes the trustees of a school district to *57 dismiss a teacher for “immorality, unfitness, incompetence, or violation of the adopted policies of such trustees.” She also determined that, because Baldridge was a tenured teacher, his tenure could not be taken away except for good cause.
Noting that the bases the Board specified for dismissing Baldridge were “incompetence, unfitness and violation of adopted policies,” the County Superintendent analyzed each of those bases and concluded that the Board had not established that Baldridge was either incompetent in his teaching duties or unfit to teach. Moreover, she determined that, while policy violations may have occurred, any such violation was legally insignificant and did not tarnish or adversely affect the teacher-student relationship. Having concluded that none of the statutory bases for dismissal existed, Barrick further concluded that the Board did not establish good cause for Baldridge’s dismissal and reversed the Board’s decision to dismiss him.
The Board appealed the County Superintendent’s findings, conclusions and order to the State Superintendent. The State Superintendent reversed the County Superintendent’s decision, determining that Barrick erred as a matter of law in concluding that the Board did not have good cause to terminate Baldridge, and Baldridge petitioned for judicial review. The District Court determined that the County Superintendent erred in concluding that Baldridge was not unfit and that any policy violations committed by him were legally insufficient to support dismissal; in other words, the court determined that the County Superintendent’s conclusions were incorrect in light of the findings of fact she made. As a result, the District Court affirmed the State Superintendent’s decision, effectively upholding the Board’s decision to dismiss Baldridge. Baldridge appeals.
STANDARDS OF REVIEW
As noted above, we clarified the standards for review of the various levels of decisionmaking involved in a teacher dismissal in Baldridge I. Pursuant to § 2-4-623, MCA, a county superintendent’s decision regarding the dismissal of a teacher by school trustees requires written findings of fact and conclusions of law, separately stated, with support provided for each conclusion of law. Baldridge I, 870 P.2d at 715. The state superintendent, in turn, reviews a county superintendent’s decision pursuant to 10.6.125, ARM, which is nearly identical to § 2-4-704, MCA, under which district courts review final decisions of administrative agencies in contested case proceedings. Baldridge I, 870 P.2d at 716. In doing so, the state superintendent may not *58 substitute his or her judgment for that of the county superintendent as to the weight of the evidence on questions of fact. Baldridge I, 870 P.2d at 716 (citation omitted).
In the event of judicial review of the state superintendent’s decision, a district court applies the standards contained in § 2-4-704, MCA. Baldridge I, 870 P.2d at 717. In doing so, however, a district court must first decide whether the county superintendent’s findings and conclusions were properly supported because, unless and until it does so, it cannot determine whether the state superintendent properly reviewed and .either affirmed or reversed the county superintendent’s decision. Baldridge I, 870 P.2d at 717-18 (citation omitted). Finally, this Court reviews findings of fact in administrative cases to determine whether the findings are clearly erroneous; we review conclusions of law to determine whether they are correct. Baldridge I, 870 P.2d at 714-15. This latter standard includes determining whether the law was properly applied to the facts. Taylor v. Taylor (1995), 272 Mont. 30, 33, 899 P.2d 523, 525.
Thus, because the County Superintendent is the trier of fact under § 2-4-623, MCA, we must focus initially on the County Superintendent’s findings and conclusions before we can determine whether the State Superintendent or the District Court erred thereafter. In this case, the County Superintendent’s findings of fact are not disputed. The sole issue, at the initial stage of our review, is whether the County Superintendent correctly applied the law to the undisputed facts. If so, both the State Superintendent and the District Court erred in determining otherwise; if not, the District Court’s affirmance of the State Superintendent’s reversal of the County Superintendent’s decision must be upheld.
. DISCUSSION
Did the County Superintendent err in concluding that Baldridge’s conduct did not constitute incompetence, unfitness or violation of Board policies pursuant to § 20-4-207, MCA (1987)?
At the outset, it is important to observe that, technically, the issue before us is whether the County Superintendent erred as a matter of law in concluding that good cause did not exist for the Board’s dismissal of Baldridge. This is so because Baldridge was a tenured teacher, and we have repeatedly recognized that a teacher’s tenure is a substantial, valuable and beneficial right which cannot be taken away except for good cause. Trustees, Missoula Cty. S.D. 1 v. Anderson (1988), 232 Mont. 501, 505, 757 P.2d 1315, 1318 (citing *59 Yanzick v. School Dist. No. 23, Etc. (1982), 196 Mont. 375, 391, 641 P.2d 431, 440; State ex rel. Saxtorph v. District Court, Fergus County (1954), 128 Mont. 353, 361, 275 P.2d 209, 214). Tenure is not the issue in this case, however, as Baldridge himself admits that tenure “cannot protect a teacher from acts of immorality, unfitness, incompetence, or violation of policies of the Board of Trustees.” Thus, the threshold issue before us is whether the County Superintendent erred in concluding that Baldridge’s conduct, as she found it to have occurred, did not constitute incompetence, unfitness or violation of Board policies under § 20-4-207, MCA (1987).
We turn first to the County Superintendent’s conclusion that Baldridge’s conduct did not constitute “unfitness” under § 20-4-207, MCA (1987). “Unfitness” is not defined by statute in Montana. Our cases indicate, however, that a teacher may be unfit to teach if he or she engages in inappropriate conduct in the classroom or with students outside the classroom. See Johnson v. Beaverhead Cty. High Sch. D. (1989), 236 Mont. 532, 771 P.2d 137; Lincoln Cty. Sch. Dist. No. 13 v. Holden (1988), 231 Mont. 491, 754 P.2d 506; Yanzick, 641 P.2d 431. Indeed, The American Heritage Dictionary 1950 (3rd ed. 1992) defines unfit as “[n]ot meant or adapted for a given purpose; inappropriate.”
As discussed above, Barrick received evidence regarding nine alleged instances of misconduct by Baldridge. She found that the glove incident — in which Baldridge sought student help in cleaning the lab by placing a rubber glove on his hand, holding the gloved hand in front of his face, palm in, and asking, “May I have a female volunteer?” — occurred in three classes on one day. She also found that additional incidents involving Baldridge occurred as follows:
1. During a heated discussion with a student over a late assignment, Baldridge ultimately responded to the student’s request for an extra day in which to turn in the work by telling the student to “Stop, drop and blow.” According to Baldridge, “stop” means quit arguing, “drop” means drop the subject, and “blow” means “blow it out your ass,” although Baldridge did not use the entire latter phrase with the student.
2. Baldridge stated to several high school students that he would “give [them] twenty bucks if you make that kid cry.”
3. Baldridge told a joke in class involving the term “testes” and had been telling the joke to his students for five years.
*60 4. In conversations with students, Baldridge made repeated indirect references to himself and others as a “prick,” by stating either “He’s what Cinderella [Snow White] did to her finger” or ‘You guys might think I’m a little_,” accompanied by a motion to prick his finger.
5. Baldridge “flipped off’ or “gave the finger” to students during the school day on school property.
6. After a female student stated that she could not “stand the sight of blood,” Baldridge replied, “[S]he must have a rough month” or words to that effect.
Determining that Baldridge’s conduct was “inappropriate and not common place,” Barrick ultimately concluded that it did not constitute “unfitness” under § 20-4-207, MCA (1987). We disagree.
Each of the seven incidents is inappropriate conduct by a high school teacher toward his students. None properly could be meant or adapted for the purpose of teaching high school science students. Moreover, in addition to being inappropriate conduct in and of itself, Baldridge’s behavior demonstrated an inherent lack of judgment regarding a teacher’s role and relationship with his students which relates directly to fitness to teach.
Nor need we determine here whether any one of the incidents, standing alone, would constitute unfitness sufficient for dismissal under § 20-4-207, MCA (1987). A teacher who makes jokes about testes and a student’s menstrual periods, flips off his students and views it as “the highest form of respect,” and makes gender-based remarks and innuendoes in his classroom is unfit to continue teaching as a matter of law.
The County Superintendent relied on Holden, as support for her conclusion that Baldridge’s conduct was insufficient to support dismissal for unfitness, but Holden is readily distinguishable. There, the teacher was dismissed for calling a student a “slob” for being inattentive and slumped down in her chair, and for saying “move over, Goodyear,” to a child or group standing in front of a tape machine. Holden, 754 P.2d at 507. The county superintendent concluded that the two incidents of inappropriate language did not constitute a statutory basis for dismissal and we ultimately held that conclusion was not erroneous. Holden, 754 P.2d at 509. Here, we are faced with numerous instances of inappropriate conduct by Baldridge, nearly all of which were related to sex or gender on the face of it. Both the *61 number of incidents and the tone and tenor of the conduct are of a greater magnitude in this case than in Holden.
Furthermore, while the County Superintendent’s findings that Baldridge did not intend to offend and that the students were not offended are supported by substantial evidence, those findings are irrelevant to the issue before us. Baldridge’s conduct was inappropriate on the face of it and it is his conduct and lack of judgment in engaging in the conduct, rather than his intent, which is at issue. In addition, the propriety of a teacher’s conduct cannot be evaluated by viewing it through the eyes of the very teenagers the teacher has a duty to educate and to guide. To do so almost certainly would result in an educational environment unacceptable to school administrators, educators, parents and society at large.
We conclude that the County Superintendent did not properly apply the law to the facts, as she found them, regarding Baldridge’s conduct. Therefore, we hold that Barrick erred in concluding that Baldridge’s conduct did not constitute unfitness under § 20-4-207, MCA (1987).
As discussed above, the State Superintendent determined that the County Superintendent erred in concluding that Baldridge’s conduct did not constitute “unfitness” and the District Court affirmed that determination. Because their decisions in that regard comport with our conclusion and holding above, it is not necessary to analyze the decisions in any detail. Baldridge asserts error with regard to other portions of those decisions, however, and we address those arguments briefly.
First, Baldridge contends that the State Superintendent substituted her judgment for that of the County Superintendent on questions of fact in contravention of the standard of review contained in 10.6.125, ARM, § 2-4-704, MCA, and Baldridge I. His contention is based on the State Superintendent’s insertion of words such as “obscene,” “egregious” and “derogatory” into her decision when such characterizations were not set forth in Barrick’s decision. While it is true that the State Superintendent characterized some of the facts differently in reaching her decision than did the County Superintendent, she did not substitute her judgment for Barrick’s regarding Baldridge’s actual conduct. The fact remains that the State Superintendent ultimately determined — and correctly so, as we held above— that the County Superintendent had erred as a matter of law. Thus, any error by the State Superintendent in this regard was harmless.
*62 Baldridge also points out that the State Superintendent first set forth the correct standard by which she was to review Barrick’s decision and then stated that “[a] review of the record in this case leaves the definite and firm conviction that the County Superintendent’s order is incorrect.” Baldridge is correct in contending that the “definite and firm conviction” test is the final prong of the clearly erroneous standard of review which applies to findings of fact. See Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. Again, however, the State Superintendent’s inclusion of this language did not prejudice Baldridge because the State Superintendent ultimately reached the correct decision.
Finally, Baldridge argues that the District Court, like the State Superintendent, substituted its judgment for Barrick’s with regard to questions of fact. We disagree. The District Court accepted Bar-rick’s undisputed findings of fact with regard to whether Baldridge’s conduct occurred. Applying the law to those facts, the court determined that the conduct Barrick found to have occurred constituted unfitness as a matter of law under § 20-4-207, MCA (1987). As discussed above, the District Court’s determination was correct.
Section 20-4-207, MCA (1987), provides that a teacher may be dismissed for “immorality, unfitness, incompetence, or violation of the adopted policies of [the Board].” Because the statute is written in the disjunctive, it is clear that only one of the statutory bases for dismissal need exist. We held above that Baldridge’s conduct constituted unfitness as a matter of law and that the County Superintendent erred in concluding otherwise. As a result, we need not address Barrick’s conclusions regarding Baldridge’s competence or violations of policies adopted by the Board.
Affirmed.
CHIEF JUSTICE TURNAGE, JUSTICES NELSON and LEAPHART concur.