No. 89-430

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

RAYMOND HARRIS,

        Petitioner and Appellant,

-vs-

TRUSTEES, CASCADE COUNTY SCHOOLS DISTRICTS
NO. 6 and F,

        Respondents and Cross-Appellants,

    and
NANCY KEENAN, Superintendent of Public Instruction,
        Respondent.

---

APPEAL FROM: District Court of the First Judicial District,
            In and for the County of Lewis & Clark,
            The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Emilie Loring; Hilley & Loring, Missoula, Montana

    For Respondent:

        Charles Erdmann; Erdmann & Wright, Helena, Montana
        Beda J. Lovitt, Office of Public Instruction, Helena,
        Montana

---

Submitted on Briefs: Dec. 28, 1989

Decided: February 8, 1990

Filed:

/Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Appellant Raymond Harris appeals the order of the Montana First Judicial District Court, Lewis & Clark County, affirming the Cascade County Superintendent of School's, the State Superintendent of Public Instruction's and the Board of Trustees of Cascade County School District No. 6 & F's (the Board) decision to dismiss Harris, a tenured teacher, due to a reduction in force. Harris (the Teacher) claims that the Board failed to follow the required statutory procedure when they terminated him. Respondent Board appeals the same order affirming the decision requiring the school district to reinstate the Teacher in the half-time teaching position that replaced his former full-time position. We affirm the decision of the District Court but on narrow grounds particular to this case.

The Teacher raises the following issue on appeal: Did the District Court err in holding that the Teacher was properly terminated under the provisions of § 20-4-204, MCA?

On cross-appeal, the Board raises the issue: Did the District Court err in affirming the County and State Ssuperintendents' determination that the school district must offer the Teacher the newly created half-time teaching position that replaced his former full-time position?

2

The Teacher was a full-time tenured physical education instructor at the Simms High School. On March 11, 1987, at its regular meeting, District Superintendent Fay Lesmeister made a written recommendation to the Board suggesting that the full-time P.E. position be eliminated for the following school year. According to the minutes of the meeting, a member of the Board moved to accept the recommendation and the motion passed unanimously. Mr. Lesmeister then administratively recommended that the Teacher not be re-hired due to the elimination of the full-time P. E. position. Again, a Board member moved to accept the administrative recommendation that the Teacher be notified of non-renewal of his contract due to the elimination of the position and the motion passed unanimously.

The Board sent a letter to the Teacher stating that they had received a recommendation for non-renewal of the Teacher's contract and that a hearing on the recommendation would be held on March 23, 1987. The hearing was held and the day after the Board sent the Teacher a termination letter stating that the Board had "voted to uphold their decision to terminate your contract." The reason given for the termination was "the elimination of the full-time P.E. Health position due to budgetary cutbacks for the 1987-1988 school year."

The Teacher appealed the decision to the County Superintendent. A recorded hearing was held on June 3, 1987. At

3

the hearing the Teacher raised the issue of whether he had been terminated properly according to the procedure outlined in § 20-4-204, MCA. The County Superintendent affirmed the Board's decision concluding that "the procedure utilized by the Respondent in changing the Petitioner's position from full-time to part-time follows the guidelines set out by the Montana legislature in § 20-4-204, MCA." The County Superintendent also concluded that because the Teacher had tenure, the Board must offer him the new half-time P.E position, and then ordered that the Teacher be reinstated in the half-time position at the half-time salary.

The Teacher appealed the County Superintendent's order to the State Superintendent of Public Instruction. The State Superintendent affirmed the decision to terminate stating the same reasons set forth in a nearly identical case (see Birrer v. Trustees, Wheatland County School District No. 16, OSPI 133-87) that technical irregularities did not affect the legality of the termination of a tenured teacher where the Board had "substantially complied" with the statute. The State Superintendent also affirmed the decision requiring the school district to offer the Teacher the half-time position.

The District Court then affirmed the decision in its entirety, concluding that the "teacher was accorded all of his rights under the statute" and that it did not have the "authority to disturb the well-reasoned administrative

4

decisions that have been made." The Teacher now appeals that portion of the order affirming his termination and the Board appeals the portion requiring it to reinstate the Teacher in the new half-time P.E. position.

I.

First, we note that the scope of review of administrative decisions is somewhat more limited. See § 2-4-704(2), MCA. Our function as an appellate court reviewing an administrative decision is not to substitute our judgment for that of the County Superintendent but rather to review the whole record to determine if the administrative findings are clearly erroneous or if the County Superintendent's conclusions of law constitute an abuse of discretion. Section 2-4-704(2), MCA, Booth v. Argenbright (1987), 225 Mont. 272, 278, 731 P.2d 1318, 1320; Yanzick v. School District #23 (1982), 196 Mont. 375, 388-389, 641 P.2d 431, 439.

II.

The acceptance by the Board of the recommendation for a reduction in force and the recommendation to terminate the tenured Teacher before notifying the Teacher of the recommendation and affording the opportunity of a pre-termination hearing violated the statutory procedure for terminating

5

tenured teachers. That procedure is set forth in §
20-4-204, MCA, which provides in pertinent part:

> 20-4-204. Termination of tenured teacher services.
> . . .
> (2) Whenever the trustees of a district receive a
> recommendation for termination, the trustees shall,
> before April 1 of the current school fiscal year,
> notify the teacher of the recommendation for termi-
> nation and of the teacher's right to a hearing on
> the recommendation.
> . . .
> (4) The trustees shall:
> . . .
> (b) Resolve at the conclusion of the hearing to
> terminate the teacher or reject the recommendation
> for termination. (Emphasis added.)
> . . .

Section 20-4-204, MCA. The above language is the result of a
1985 amendment. Under the statute's former language the
Board could act on a termination recommendation prior to
notifying the teacher of the termination and of the right to
a hearing. If requested, the hearing was for the Board to
"reconsider" their termination action. See § 20-4-204, MCA
(1983).

The 1985 amendment attempts to correct a perceived
unfairness in the statute's procedure for terminating tenured
teachers. The amendment sought to prevent the situation
arising under the former statute where the Board of Trustees
would vote to terminate a tenured teacher immediately after
an ex parte recommendation from the superintendent. In that
situation the Board could already have formed an opinion

6

regarding the grounds for the termination, and therefore the efforts of a teacher to refute such grounds and overturn a decision to terminate at a subsequent hearing would be ineffectual if not futile. See Birrer v. Trustees, Wheatland County School District No. 16. (Mont. 1990), ___ P.2d ___, ___ St.Rep. ___ (cause no. 89-401, decided Feb. 6, 1990). The current statute now requires that the Board not make a decision respecting a recommendation for termination until after the tenured teacher is afforded a hearing. See § 20-4-204(4)(b), MCA.

Therefore, we must disagree with the District Court's conclusion that the Teacher was "accorded all of his rights under the statute." The statutory procedure was not followed.

We also reject the Board's argument that it did not accept the substance of the recommendation but merely acknowledged receipt of it. The County Superintendent found that the District Superintendent made a recommendation to eliminate the full-time P.E. position, that this recommendation was accepted, and that the Board eliminated the position and created a new half-time position. The findings then indicate that the District Superintendent recommended that the Teacher not be rehired because the position no longer existed. While no finding was made that the Board specifically voted to terminate this particular teacher, the

7

minutes of the Board meeting indicate that after the District Superintendent recommended that the Teacher not be rehired the Board then unanimously voted to "accept the administrative recommendation that Mr. Ray Harris be notified of non-renewal of his contract due to the elimination of the full-time P. E. position." That this decision was made prior to the necessary hearing is also evident from the post-hearing notice of the Board's decision which stated that the Board "voted to uphold . . . [its] decision to terminate. . . ."

We further reject any argument that the procedure followed in the termination was merely a "technical" irregularity or that the Board "substantially complied" with the termination statute. The very purpose of the 1985 amendment was to enact a technical requirement guaranteeing tenured teachers a pre-termination hearing prior to any decision by the Board. The legislature sought to protect tenured teachers from unjustified terminations by requiring that school trustees keep an open mind relating to the suggested termination until both sides have an opportunity to be heard. See Birrer, supra.

Notwithstanding the above, we affirm the termination because under these facts the errors committed here did not cause the teacher substantial prejudice. The present case is an appeal from a lower appellate tribunal which in turn based

8

its conclusions on a review of the printed record. The procedure in appealing to this Court is identical to that used in any other district court decision. Booth, 731, P.2d at 1321; Yanzick, 641 P.2d at 439. The distinction is that here, the County Superintendent, not the District Court, was the trier of fact:

> (2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court may reverse or modify the decision [of an agency] if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) affected by other error of law;
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (g) because findings of fact, upon issues essential to the decision, were not made although requested. (Emphasis added.)

Section 2-4-704(2), MCA. Here, the Teacher was not accused of poor performance, incompetence, immorality, unfitness or violation of Board policy. He was not terminated for any personal reason. Nor did the teacher allege that the reduction in force was an attempt to masquerade any of the foregoing reasons. He admittedly was terminated solely due to the

9

District's poor financial condition, a condition of which the Board was surely aware. If the Board had any pre-formed opinion when they voted on the recommendation to terminate, it was not singly the result of the ex parte recommendation of the District Superintendent. Rather, it resulted as much or more from their own knowledge of the financial situation in the District. While several grounds for reversal under § 2-4-704, MCA, could be alleged in this case, the crucial determination for reversal is whether "substantial rights of the appellant have been prejudiced." Under the particular facts of this case, no substantial prejudice occurred and the purposes of the procedural statute, § 20-4-204, MCA, to protect tenured teachers from pre-formed opinions and ex parte representations, were not contravened. Birrer, supra. The District Court did not abuse its discretion in affirming the lower tribunals' decision because under these facts no prejudice occurred.

III.

On cross appeal the Board maintains that the County Superintendent, and in turn the State Superintendent and the District Court, erred in holding that the District must offer the former full-time teacher the newly created half time position.

We disagree. First, we note once again that administrative decisions may be judicially reversed "if substantial rights of the appellant have been prejudiced." Section 2-4-704(2), MCA. Here, the Teacher was terminated solely for financial reasons, not because the Board had any criticism of his performance. Indeed, if his performance had been at issue the termination would have been unlawful. The School District cannot claim that it was prejudiced by the decision requiring it to employ an admittedly qualified former full-time tenured teacher in the half-time position.

We also endorse the District Court's conclusion that this Court's decision in Massey v. Argenbright (1984), 211 Mont. 331, 337, 683 P.2d 1332, 1335, is controlling and requires that the teacher be offered the part-time position. In Massey, we held that the language of the tenure statute, § 20-4-203, MCA,--which guarantees teachers employment "at the same salary" and in a "comparable position of employment" --cannot be given a broad meaning when a school district wishes to reassign a tenured teacher to another position and at the same time be construed narrowly when a district chooses to terminate a tenured teacher. Section 20-4-203, MCA; Massey, 683 P.2d at 1335. The Board correctly points out that § 20-4-203, MCA, guarantees this protection unless the teacher is terminated under § 20-4-204, MCA. Once terminated, the teacher no longer retains tenure rights. See §

11

20-4-203, MCA. The Board then argues that it performed two distinct administrative acts: (1) elimination of the full-time P.E. position and, consequently, termination of the Teacher holding it, and (2) creation of a new half-time P.E. position.

We reject this distinction as artificial. As the State Superintendent noted, the position held by the teacher was actually reduced from full-time to half-time; to interpret the Board's action as eliminating an old position and creating a new position involves a hypertechnical distinction that could seriously threaten the value of tenure. For us to hold otherwise would permit school boards to circumvent tenured rights by asserting, as this Board does, that a teacher is terminated in his or her full-time position but that the remaining half-time job, with identical duties other than hours of service, is an entirely new position for which a tenured teacher would be entitled to no consideration.

The P.E. position resulting from the reduction is clearly comparable to the original full-time position. The District Court did not err in affirming the administrative decision requiring the Board to offer the teacher the position. Moreover, notwithstanding the Board's failure to follow the proper termination procedures set forth in § 20-4-204, MCA, no prejudice resulted in this case that would

12

warrant reversal of an administrative decision under §
2-4-704(2), MCA.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13