No.   90-137

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

WILLIAM G. HARRIS,

      Petitioner and Appellant,

-v-

CHARLENE BAILEY, Superintendent of Schools,
Lincoln County, Montana, sitting for Sonja
Spannring, Superintendent of Schools, Park
County, Montana, and LIVINGSTON SCHOOL
DISTRICTS NOS. 4 AND 1, Park County, Montana,
and ED ARGENBRIGHT, State of Montana,
Superintendent of Public Instruction,

      Respondents and Respondents.



FILED

SEP  4 1990

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixth Judicial District,
              In and for the County of Park,
              The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Chris J. Nelson; Nelson & Gai; Billings, Montana

      For Respondent:

          Laurence R. Martin; Felt, Martin, Frazier & Lovas;
          Billings, Montana
          Beda J. Lovitt, Office of Public Instruction,
          Helena, Montana

                     Submitted on Briefs:   July 13, 1990

                         Decided:   September 4, 1990

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a judgment of the Sixth Judicial District, Park County, dismissing appellant William G. Harris' (Harris) petition for judicial review. The District Court's order affirmed the decision of the Livingston School District (School District) to terminate Harris for unfitness and incompetence. The order of the District Court is affirmed.

Harris raises seven issues with attendant sub-categories for review. Several of these issues can be combined, however, and we find the issues to be reduced as follows:

1) Whether subsequent to his termination for incompetence and unfitness, the School District was required to offer Harris the next available position in any area for which he was certified other than school psychologist;

2) Whether § 39-2-801, MCA, applies to this case;

3) Whether there was sufficient evidence to find that Harris was incompetent;

4) Whether the School District failed to follow proper procedure when it terminated Harris pursuant to § 20-4-207, MCA;

5) Whether the School District is immune from suit alleging a breach of the covenant of good faith and fair dealing.

The facts of this case constitute a long history, which includes two appeals to this Court. Although this appeal arises out of the School District's termination of Harris for unfitness and incompetence on September 18, 1985, the initial controversy arose out of an earlier termination of Harris on April 14, 1981,

2

which was the subject of prior litigation and which was twice reviewed by this Court. The proceedings in both cases must be reviewed to understand the issues raised in this appeal.

Harris began his teaching career in the Gardiner school system in 1963. He taught in Gardiner until February 1973, when he was employed by the Livingston School District. During the school year 1980-1981, Harris' position was changed by the School District to school psychologist.

During the greater portion of his career, Harris enjoyed the respect and admiration of his peers and his students. Unfortunately, the respect accorded him by some of his peers began to wane. Problems between Harris and certain employees of the School District arose and these problems eventually culminated in his termination by the Board of Trustees on April 14, 1981.

Harris appealed his termination and eventually the appeal reached this Court. See Harris v. Bauer (1983), 206 Mont. 480, 672 P.2d 26. The principal issue on that appeal was whether Harris was a tenured teacher. This Court determined that he had obtained tenure and remanded the case to the District Court for a determination of the legality of the discharge procedures used by the School District in terminating Harris. The District Court remanded the case to the County Superintendent for a determination of this issue.

Upon remand, the Superintendent determined that the School District did not properly terminate Harris, and ordered that he be reinstated and awarded back pay and fringe benefits in the amount

of $110,518.74. The County Superintendent further advised the School District to follow proper discharge procedures if it desired to discharge Harris.

Both Harris and the School District appealed the order of the County Superintendent. Harris maintained that the Superintendent failed to properly calculate the back salary owed to him and failed to award him a proper amount of interest and attorney's fees. On appeal, the State Superintendent of Schools affirmed the decision in its entirety. Harris then appealed to the District Court. It also affirmed the decision of the County Superintendent. The decision of the District Court was appealed to this Court on October 22, 1987. On appeal this Court adjusted Harris' award by determining that the County Superintendent improperly deducted wages earned by Harris during the summer months. Harris v. Bauer (1988), 230 Mont. 207, 749 P.2d 1068.

During the course of this appeal, the School District again acted to terminate Harris for unfitness and incompetence pursuant to § 20-4-207, MCA. A letter was sent to Harris on July 23, 1985 notifying him that a hearing would be held to determine whether he should be discharged. The termination hearing was held on September 18, 1985 and at its conclusion the Board of Trustees voted to terminate Harris for incompetence and unfitness. Harris was represented by counsel at the hearing.

The decision of the Board of Trustees was appealed to the Acting County Superintendent of Schools who, after five days of hearing, affirmed the decision of the School District. Harris then

appealed to the State Superintendent of Schools, who similarly affirmed the order terminating his employment. He then filed a petition for judicial review in the Sixth Judicial District, Park County. The matter was briefed by both parties and following oral argument, the Honorable Peter L. Rapkoch issued a written order affirming the decision. This appeal followed.

I

Whether the School District is required to offer Harris a teaching position in other areas of his certification.

When Harris was originally hired by the Livingston School District, he was certified to teach science, biology, chemistry and guidance counseling. It is his contention that subsequent to his discharge as a psychologist, the School District should have offered him a job teaching in one of the areas that he was certified. In making this argument Harris relies upon Massey v. Argenbright (1984), 211 Mont. 331, 683 P.2d 1332 and Nye v. Dept. of Livestock (1982), 196 Mont. 222, 639 P.2d 498.

In Massey, a teacher with a fully satisfactory performance record was discharged as a result of a reduction in force. The school board in Massey, refused to offer the teacher a position that he was qualified to teach because he had never taught in that area and because a nontenured teacher already held the position. The District Court reversed and held that a school district cannot dismiss a competent tenured teacher and retain a nontenured teacher if the tenured teacher is qualified to teach in the area filled by the nontenured teacher. We affirmed the judgment of the district

5

court. See Massey, 683 P.2d at 1335. In short Massey establishes the principle that under § 20-4-204, MCA, a tenured teacher who is discharged as part of a reduction of force has "bumping rights," under certain conditions, over nontenured teachers.

The rule of law established in Massey does not apply to this case. We point out that the teacher in Massey was laid off for economic reasons under § 20-4-204, MCA. Harris, on the other hand was terminated for incompetence and unfitness pursuant to § 20-4-207, MCA. Therefore, the holding in Massey is not applicable to Harris' case. However, public policy also dictates a rejection of his argument.

If Harris' argument is followed to its logical conclusion the School District would have been required to terminate a nontenured teacher to make room for Harris, who was found to be incompetent. The goals of the State of Montana in educating its youth would not be served by such a result.

Harris also relies upon Nye v. Dept. of Livestock (1982), 196 Mont. 222, 639 P.2d 498. In Nye, the plaintiff worked for the Department of Livestock as a permit clerk. After two years of employment in that position, she was promoted. At the time of her promotion it was understood that she would go through a six-month probationary period before she received a permanent job at that level. The plaintiff failed at this job and was fired from the Department. On appeal, this Court found that Nye was properly terminated from the job that she was promoted to. However, we also held that because she had attained permanent status as a

6

permit clerk, under § 2-18-101, MCA, the Department had an obligation to follow public policy expressed in its own regulations and conduct a hearing on the issue of her termination.

The holding of <u>Nye</u> does not apply to Harris' case because it was not decided under school statutes. Harris' termination occurred in accordance with § 20-4-207, MCA, a statute passed by the legislature to address the specific circumstance presented by this case, i.e., the termination of an incompetent teacher. Therefore, any reliance upon <u>Nye</u>, which involved completely different employment statutes, is misplaced.

Next, Harris argues that his employment was wrongfully terminated under § 20-4-207, MCA, because that section only applies to dismissal of teachers and not specialists such as school psychologists. This position is untenable. In Harris' first appeal we held that he was a tenured teacher and was therefore entitled to all of the protections and benefits accorded tenured teachers under Title 20, Chapter 4 Montana Code Annotated. See Harris v. Bauer (1983), 206 Mont. 480, 672 P.2d 26. This was a decision in his favor. His position at this juncture is totally at odds with this holding and is therefore contrary to both established law and his prior position which was taken in the earlier appeal. We hold that Harris was properly terminated under § 20-4-207, MCA.

## II

Whether § 39-2-801, MCA, applies to this case.

We need not review the merits of Harris' argument in regard

to his allegation that the School District violated § 39-2-801, MCA, because we hold that this statute does not apply to the termination of teachers. Section 39-2-801, MCA, requires an employer, upon an employee's request, to provide a discharged employee with a statement of the reasons for the discharge. If an employer refuses to abide by this request, he is forbidden from utilizing any reasons for discharge to justify the termination. Swanson v. St. John's Lutheran Hospital (1979), 182 Mont. 414, 597 P.2d 702.

Harris maintains that the School District failed to provide him with a written statement for his discharge in 1981, when he was first terminated. Relying upon Swanson, he further argues that the School District is now precluded from utilizing any reasons at his second termination hearing, which occurred in 1985. We disagree.

Section 39-2-801, MCA, applies to employees and employers in general commerce. Termination of teachers is governed by § 20-4-207, MCA. Montana law provides that when there are two statutes, the more specific statute controls over the more general. See § 1-2-102, MCA; In re Stevenson's Estate (1930), 87 Mont. 486, 289 P.2d 566. Section 20-4-207, MCA, is specific to teachers, and it controls and enumerates Harris' remedies upon termination. Therefore, § 39-2-801, MCA, is inapplicable to this case.

III

Whether there was sufficient evidence to find that Harris was incompetent.

Findings of fact of an administrative agency are subject to

8

the "clearly erroneous" standard of review. This Court cannot substitute its judgment for that of an agency on questions of fact. Section 2-4-704(2), MCA. If there is substantial credible evidence in the record, the findings are not clearly erroneous. Any agency's conclusions of law are subject to the "abuse of discretion" standard of review. See § 2-4-704, MCA.

We must review the findings of fact and the ultimate conclusion of the County Superintendent that Harris was properly terminated according to the standard of review recited above. To begin, we note that there is ample testimony which was presented at Harris' termination hearing which characterized him as a concerned, compassionate individual who is highly respected and appreciated by those who know him well. Apparently, Harris has enjoyed great popularity with his students. In fact, on at least one occasion he was picked by the students to speak at graduation ceremonies.

There is, however, sufficient evidence to support the conclusion that Harris was incompetent as a school psychologist. In May of 1981 it was recommended by school officials that Harris be terminated. Apparently, numerous complaints were lodged from teachers and parents concerning Harris' work. Joy Waylander, the other psychologist employed by the School District, reviewed Harris' testing score and psychological evaluations. She found the test scores inaccurate due to numerous, serious scoring and administration errors. She also noted deficiencies in Harris' psychological reports in that they were vague and contradictory.

9

Mrs. Waylander's findings ultimately led the School District to seek other experts to review Harris' work. Eventually four experts reviewed 109 of the 400 cases prepared by Harris. As a result of their review, all experts agreed that Harris was incompetent.

In his brief on appeal, Harris does not contest the findings of the experts or the School District. Rather, he devotes a large portion of his brief arguing that because he has no formal training or education as a school psychologist it is unfair to judge his work according to the high standards set by the School District. We find this argument unpersuasive. Harris was employed as a school psychologist and he accepted the position. He must be judged according to the competencies expected of someone holding such a position. Any other role would effectively sanction the hiring of incompetent teachers and administrators in our public schools at the expense of the students.

The findings of the School District establishing Harris' incompetence are supported by the record. They are not therefore clearly erroneous. Given this evidence, the conclusion of law stating that Harris was properly terminated for incompetence and unfitness was not an abuse of discretion. The judgment in this regard is affirmed.

IV

Whether the School District failed to follow proper procedures when it terminated Harris pursuant to § 20-4-207, MCA.

Harris next argues that the notice sent him by the School

District informing him of the reasons for his dismissal was inadequate. He proceeds on two fronts in making this argument. First, he argues that the notice failed to adequately set forth specific deficiencies regarding his ability to teach. Second, he argues that because the School District inadequately set forth reasons for his termination in 1981, it should be precluded from amending its notice in 1985 to include further reasons for termination. In making this argument, he relies upon Lindgren v. Board of Trustees (1976), 171 Mont. 360, 558 P.2d 468.

We disagree with both of these assertions. To begin, we point out that Harris was fired due to his incompetence as a school psychologist. He never taught at the Livingston School District and therefore it would have been impossible for the School District to enumerate instances of incompetency in this area. The reasons for Harris' termination as a school psychologist are adequately set forth in the letter informing Harris of proposed action by the School District. He was therefore accorded adequate notice to present his case at his termination hearing. The fact that he was able to amass evidence in his favor and was accorded a five day hearing before the County Superintendent lends further credence to the opinion that he was not prejudiced due to lack of adequate notice.

Further, Harris' reliance upon Lindgren v. Board of Trustees (1976), 171 Mont. 360, 558 P.2d 468, is unfounded. Lindgren involved a school district that attempted to dismiss a teacher for legally insufficient reasons. Shortly before Lindgren's

termination hearing the school district attempted to amend its notice to include additional reasons for dismissal. Upon review, this Court held that the school district was precluded from amending its notice.

The facts surrounding Harris' case are completely different than those presented by Lindgren. The 1985 termination was a completely different proceeding than that of 1981. The procedures surrounding the 1985 termination were taken in response to the County Superintendent's recommendation that the School District follow proper procedures if it wanted to discharge Harris. This recommendation was given by the Superintendent following the decision that Harris had not been properly terminated. Therefore, the notice sent Harris in 1985 was not an amendment to any notice given in 1981. Rather it was written notice, sent in compliance with statutory law to notify Harris of proceedings to be undertaken in order to bring about his termination.

V

Whether the School District is immune from suit alleging breach of the covenant of good faith and fair dealing.

Once again we need not address the merits of Harris' argument concerning his allegations that the School District breached the covenant of good faith and fair dealing. Under § 2-9-111, MCA, the School District is immune from suits arising from the acts and omissions of its legislative body:

> **2-9-111. Immunity from suit for legislative acts and omissions.** (1)
> As used in this section:
>     (a) the term "governmental entity" includes the

state, counties, municipalities, and school districts;

(b) the term "legislative body" includes the legislature vested with legislative power by Article V of The Constitution of the State of Montana and any local governmental entity given legislative powers by statute, including school boards.

(2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.

(3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

(4) The immunity provided for in this section does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation.

The plain language of this statute shields the School District from any liability which may arise from Harris' allegations concerning bad faith. See Peterson v. Great Falls School Dist. No. 1 & A (1989), 237 Mont. 376, 773 P.2d 316. The term "governmental entity" is defined to include school districts. See § 2-9-111(1)(a), MCA. Under the plain language of § 2-9-111(2), MCA, governmental entities are immune from suit for actions taken by its legislative body, which is defined to include school boards. See § 2-9-111(1)(b), MCA.

VI

## Conclusion

Having reviewed Harris' issues on appeal in full we find no reversible error committed by the District Court. Its judgment is therefore affirmed.

_____
Justice

We Concur:

_____

13

_____
_____
_____
Justices

14