No. 04-675

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 83

SCOBEY SCHOOL DISTRICT,

        Respondent and Appellant,

    v.

MIKE RADAKOVICH,

        Petitioner and Respondent.

APPEAL FROM:    The District Court of the Fifteenth Judicial District,
In and For the County of Daniels, Cause No. DV-10-2003-16,
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jeffrey M. Hindoien, Gough, Shanahan, Johnson & Waterman,
Helena, Montana

    For Respondent:

        Laura Christoffersen, Knierim, Fewer & Christoffersen, P.C.,
Culbertson, Montana

    For Amicus Curiae:

        Karl J. Englund, Attorney at Law, Missoula, Montana (MEA-MFT)

Submitted on Briefs:  July 20, 2005

Decided:   April 25, 2006

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Scobey School District appeals from the order of the Fifteenth Judicial District Court reversing the Daniels County Superintendent's decision upholding the Scobey School District's termination of Mike Radakovich as a tenured teacher. We reverse.

¶2 We consider the following issue on appeal:

¶3 Did the District Court err in reversing the Daniels County Superintendent's decision upholding the Scobey School District's termination of a tenured teacher?

## BACKGROUND

¶4 Hired in 1987 by the Scobey School District (District), Respondent Mike Radakovich (Radakovich) taught social studies at Scobey High School until 1994. During this period, Radakovich possessed State certification and endorsement in only one subject area, social studies. As a result, he did not teach other classes during his time at the District.

¶5 In late 1993 and early 1994, District Superintendent of Schools Dustin Hill (Hill) assessed the District's financial situation and determined that expenditures had to be reduced for the next fiscal year. While estimates fluctuated, Hill indicated that between $98,000 and $114,000 had to be cut from the District's budget. As such, Hill recommended that the Scobey School Board (Board) reduce staffing costs in the District's schools by approximately $60,000. He met with Scobey High School Principal George Rider to discuss staff reductions at the high school.

2

¶6     After his meeting with Principal Rider, Hill met with the Scobey High School faculty to discuss the impending Reduction in Force (RIF), and provided the staff with the criteria that would be used to make the RIF.  The worksheet provided to the staff read in pertinent part:

> When considering a R.I.F. in the **HIGH SCHOOL**, the following criteria will be considered:
>
> 1.  Seniority and evaluations where possible.
>
> 2.  Endorsements in the programs we offer.
>
> a)  Multiple endorsements will be preferred due to the versatility of using teachers in more than one area.
>
> b) Total number of students assigned to teachers must be consistent with accreditation standards. e.g. Teachers in a significant writing program maximum of 100 students.

¶7     After evaluating program needs, Hill recommended to the Board a restructuring of teaching positions based upon the certifications of the teaching staff.  As part thereof, Hill recommended that the Board terminate Radakovich.   The letter recommending Radakovich's termination, dated March 21, 1994, outlined the reasons behind the recommendation, including recent school funding changes and Radakovich's lack of multiple-subject endorsements.   Thereafter, the Board notified Radakovich of the recommendation, and pursuant to statute, scheduled a hearing regarding the dismissal. After the hearing, held on April 12, 1994, the Board voted unanimously to accept Superintendent Hill's recommendation, and took formal action to terminate Radakovich's

employment. Pursuant to the restructuring, the District also formally terminated at least one other teacher employed by the District.

¶8 As two other social studies teachers, one a tenured teacher junior to Radakovich and the other a non-tenured teacher, were retained by the District under the restructuring, Radakovich challenged his termination in binding arbitration under the Collective Bargaining Agreement (CBA) between the District and the Scobey MEA. Following arbitration, the arbitrator affirmed Radakovich's dismissal, and Radakovich thereafter sought relief from the County Superintendent of Schools and, ultimately, the State Superintendent of Public Instruction, pursuant to § 20-4-204, MCA (1993). In each instance he argued that his termination violated both § 20-4-203, MCA (1993), and the CBA. Both superintendents affirmed his dismissal. However, upon judicial review, the District Court reversed, finding that Radakovich's rights under § 20-4-203, MCA (1993), had been violated, and that his termination violated the CBA. Thereafter, the District appealed to this Court.

¶9 In July of 2000, we reversed the order of the District Court, and remanded the matter back to that court with instructions to remand to the County Superintendent for further proceedings. *Radakovich v. Board of Trustees*, 2000 MT 176N, 302 Mont. 537, 12 P.3d 425 (*Radakovich I*). We determined that (1) the District Court had improperly reviewed the arbitrator's finding that Radakovich's termination did not violate the CBA, and (2) the County Superintendent had not only failed to enter appropriately supported and reasoned findings of fact and conclusions of law as required by *Baldridge v. Board of*

4

*Trustees* (1994), 264 Mont. 199, 870 P.2d 711 (*Baldridge I*), but had also failed to address Radakovich's contention that his termination violated § 20-4-203, MCA (1993). On remand, the County Superintendent was required to enter appropriate findings of fact and conclusions of law, and to rule on the merits of Radakovich's § 20-4-203, MCA (1993), claim. *Radakovich I*, ¶ 29.

¶10 Following remand, and in accordance with *Radakovich I*, the County Superintendent once again reviewed Radakovich's appeal, made detailed findings of fact and conclusions of law, and again concluded that the District had properly terminated his contract. On appeal, the State Superintendent of Public Instruction affirmed. However, the District Court again reversed, concluding that the use of the "multiple endorsements" criteria violated both the CBA and § 20-4-203, MCA (1993), and further, that the "multiple endorsements" criteria was unfairly applied.

¶11 Appellant Scobey School District appeals.

## STANDARDS OF REVIEW

¶12 A tenured teacher has the right to appeal his or her dismissal to the County Superintendent of Schools. Section 20-4-204(5), MCA (1993). Pursuant to §§ 20-4-204(5), MCA (1993), and 2-4-623, MCA (1993), the County Superintendent, in turn, must make concise and explicit findings of fact as well as conclusions of law. *See Baldridge I*, 264 Mont. at 206, 870 P.2d at 715. In a case involving the dismissal of a tenured teacher, the County Superintendent is the trier of fact. *Baldridge v. Board of Trustees* (1997), 287 Mont. 53, 58, 951 P.2d 1343, 1346 (*Baldridge II*).

5

¶13 Upon final decision of a County Superintendent, a case may be appealed by either party to the State Superintendent. Section 20-4-204(6), MCA (1993). The State Superintendent reviews the decision of the County Superintendent pursuant to Rule 10.16.125, ARM. On review, the State Superintendent is confined to the record, and may not substitute his or her judgment for that of the County Superintendent as to the weight of the evidence on questions of fact. *Baldridge I*, 264 Mont. at 207, 870 P.2d at 716; *see also* Rule 10.16.125, ARM.

¶14 "In the event of judicial review of the state superintendent's decision, a district court applies the standards contained in § 2-4-704, MCA." *Baldridge II*, 287 Mont. at 58, 951 P.2d at 1346, citing *Baldridge I*, 264 Mont. at 209, 870 P.2d at 717. However,

> a district court must first decide whether the county superintendent's findings and conclusions were properly supported because, unless and until it does so, it cannot determine whether the state superintendent properly reviewed and either affirmed or reversed the county superintendent's decision. *Baldridge I*, 870 P.2d at 717-18.

*Baldridge II*, 287 Mont. at 58, 951 P.2d at 1346.

¶15 Finally, this Court reviews administrative findings of fact to determine whether the findings are clearly erroneous. *Baldridge I*, 264 Mont. at 205, 870 P.2d at 714. We review conclusions of law to determine whether they are correct. *Baldridge I*, 264 Mont. at 205, 870 P.2d at 714-15.

> [B]ecause the County Superintendent is the trier of fact under § 2-4-623, MCA, we must focus initially on the County Superintendent's findings and conclusions before we can determine whether the State Superintendent or the District Court erred thereafter.

*Baldridge II*, 287 Mont. at 58, 951 P.2d at 1346.

6

## DISCUSSION

¶16 After the first appeal to this Court, we remanded to the District Court with instructions to remand to the County Superintendent for more thorough fact-finding as required by § 2-4-623, MCA (1993). *Radakovich I*, ¶ 29. We also instructed the County Superintendent to evaluate Radakovich's claim under § 20-4-203, MCA (1993), and to decide whether objective RIF criteria were fairly applied by the District. *Radakovich I*, ¶ 29.

¶17 The District Court concluded that the Daniels County Superintendent had generated "concise and explicit statements of the underlying facts supporting his findings," and therefore fulfilled its duties under § 2-4-623, MCA. After review, we agree that the County Superintendent complied with § 2-4-623, MCA. Further, the County Superintendent entered three critical conclusions of law: that (1) there was "good cause" for the RIF, (2) Radakovich's termination did not violate § 20-4-203, MCA, and (3) the use of "multiple endorsements" as a criterion was not only objective, but fairly applied by the District. Based upon those conclusions, the County Superintendent ruled in favor of the District, and upheld Radakovich's dismissal. Ultimately, the District Court concluded that the County Superintendent's conclusions of law were "erroneous" and reversed. For the following reasons, we believe the District Court's reversal was in error.

*Was there good cause for the RIF?*

¶18     "A teacher's tenure is a substantial, valuable and beneficial right, which cannot be taken away except for good cause."  *State v. District Court, Fergus County* (1954), 128 Mont. 353, 361, 275 P.2d 209, 214.  However, it is also clear that the tenure right

> must be balanced against the school board's "requisite authority to manage the school district in a financially-responsible manner.  This includes eliminating certain programs and activities, and thereby terminating or reassigning personnel."

*Massey v. Argenbright* (1984), 211 Mont. 331, 336, 683 P.2d 1332, 1334, citing *Sorlie v. School Dist. No. 2* (1983), 205 Mont. 22, 29, 667 P.2d 400, 403.

¶19     In its revised findings of fact and conclusions of law, the County Superintendent determined that the District's undisputed reduction in general fund revenue constituted "good cause" for the RIF.  This conclusion followed from *Sorlie*, where a school district, because of a failure in state and federal funding, cut an administrative position within the district which had recently been awarded to a teacher, and reassigned the teacher.  *Sorlie*, 205 Mont. at 25, 667 P.2d at 401.  Implicit within *Sorlie*'s holding is the principle that a reduction in funding will constitute "good cause" for an RIF.  *Sorlie*, 205 Mont. at 28, 667 P.2d at 403 (a reassignment "for legitimate financial constraints . . . is justifiable and not contrary to tenure laws"); *see also Massey*, 211 Mont. at 336, 683 P.2d at 1334, and § 20-4-203(2), MCA (preserving the tenure status of a teacher RIFed because of a district's financial condition).

¶20     In reversing the decision of the County Superintendent, the District Court concluded that the County Superintendent's determination that there was good cause for

8

Radakovich's termination was "erroneous," and in violation of § 20-4-203, MCA (1993), despite the undisputed fact that the district's reduced funding required staff reductions. It is apparent that the District Court's analysis conflated the "good cause" requirement with the application of §§ 20-4-203 and 20-4-204, MCA (1993).

¶21 "Good cause" must be established as a threshold requirement before a district may dismiss a tenured teacher. *See Massey*, 211 Mont. at 336, 683 P.2d at 1334. If "good cause" to dismiss a tenured teacher exists, then a district must follow the procedures outlined in §§ 20-4-203 and 20-4-204, MCA (1993), to effectuate the teacher's dismissal. As discussed above, we held in *Sorlie* that a reduction in funding constitutes "good cause" for a RIF. The District Court, however, found fault with the County Superintendent's "good cause" determination by reasoning that the RIF violated § 20-4-203, MCA (1993). This was incorrect. While § 20-4-203, MCA (1993), concerns tenure and how it is earned, it says nothing about what constitutes "good cause."

¶22 The County Superintendent's Conclusion of Law Number 7, which determined that the financial circumstances facing the Board of Trustees constituted "good cause" for a RIF, was correct. *See Sorlie*, 205 Mont. at 28, 667 P.2d at 403. As such, the District Court's reversal of Conclusion of Law Number 7 was error.

### *Was Radakovich's RIF in contravention of § 20-4-203, MCA (1993)?*

¶23 The County Superintendent concluded that "Mr. Radakovich's RIF was not undertaken in violation of any 'bumping' right he may have had under § 20-4-203, MCA (1993), or *Massey* and *Holmes*." The County Superintendent reasoned that (1) the

9

District had the right to reduce its staff as a result of the decrease in funding, (2) it had the right to restructure the District in such a way as to eliminate the full-time social studies position at Scobey High School, while creating positions utilizing multiple-subject teaching responsibilities, and therefore (3) it had the right to RIF Radakovich, a teacher with certification in only one subject.

¶24   The District Court disagreed, determining that the RIF was "contrary to Section 20-4-203, MCA," because (1) the use of "multiple endorsements" as a criterion during the District restructuring undermined tenure, and (2) the RIF violated the CBA's provisions governing teacher-district disputes and contracts.   We turn to these conclusions.

¶25   Section 20-4-203, MCA (1993), reads as follows:

> **20-4-203. Teacher Tenure.** (1) Except as provided in 20-4-208, whenever a teacher has been elected by the offer and acceptance of a contract for the fourth consecutive year of employment by a district in a position requiring teacher certification except as a district superintendent or specialist, the teacher is considered to be reelected from year to year thereafter as a tenure teacher at the same salary and in the same or a comparable position of employment as that provided by the last executed contract with the teacher unless the trustees resolve by majority vote of their membership to terminate the services of the teacher in accordance with the provisions of 20-4-204.

Although this section describes how the tenure right is attained and operates, it says nothing about the corresponding "bumping" right referred to by both the County Superintendent and the District Court.   We have held that "bumping rights" protect a tenured teacher from termination in RIF situations by allowing a tenured teacher to unseat a non-tenured teacher in a position for which the tenured teacher is also qualified.

10

*See Harris v. Bailey* (1990), 244 Mont. 279, 283, 798 P.2d 96, 99 ("a tenured teacher who is discharged as part of a reduction of force has 'bumping rights,' under certain conditions, over nontenured teachers."); *Holmes v. Madison & Jefferson Counties* (1990), 243 Mont 263, 267, 792 P.2d 10, 13 ( "we hold that when the school board eliminated Mr. Holmes' position, § 20-4-203, MCA, obligated it to offer Holmes a comparable teaching position held by a non-tenured teacher."); *see also Massey*, 211 Mont. 331, 683 P.2d 1332. Further, neither party here disputes that the bumping right also allows a senior tenured teacher to unseat a junior tenured teacher.

¶26 Taking exception to the order of the District Court, the District argues that it properly RIFed Radakovich under § 20-4-203, MCA (1993), because Radakovich was not qualified to undertake any of the positions, with the accompanying multi-certification requirements, which were filled by junior-tenured or non-tenured teachers after the restructuring. Radakovich, on the other hand, argues that the District's restructuring itself, and not necessarily the post-restructuring decision to terminate him as not certified to teach the available positions, violated his tenure protections. He argues that restructuring in such a way which considers the number of endorsements possessed by teachers, and which therefore allows the retention of non-tenured and junior-tenured teachers over more senior tenured teachers, contravenes § 20-4-203, MCA (1993), as well as this Court's decisions in *Massey*, *Holmes*, and *Harris*.[1] The District Court

---

[1]The effect of restructuring in this case was to eliminate the full-time, single-certification social studies position at Scobey High School in favor of teaching positions which required multiple-subject certification. Thus, after restructuring, a health teacher,

appears to have agreed with Radakovich, though in a manner clouded with discussion on the merits of the CBA. However, we must disagree with Radakovich's argument.

¶27 First, Radakovich asserts that *Massey*, *Holmes*, and *Harris* require a school district, when faced with economic restructuring and impending RIFs, to absolutely protect tenure and seniority rights during the restructuring process. In other words, a school district can restructure only in ways that would ensure the employment of tenured teachers, beginning by protecting the most senior tenured teacher, down to the most junior tenured teacher, before restructuring options which utilized nontenured teachers could be implemented. Our cases, however, do not stand for such a broadly sweeping interpretation of the tenure right.

¶28 In *Massey*, a school district dismissed a tenured teacher holding endorsements in three subjects, including P.E., in favor of non-tenured P.E. teachers who had majored in physical education in college. The Board justified the tenured teacher's dismissal by citing its policy to only hire teachers to teach in subjects in which they majored in college. We, however, disagreed, and held that the state tenure laws, including § 20-4-203, MCA, protected the dismissed teacher under the circumstances, since the dismissed tenured teacher was otherwise certified to teach a position held by a non-tenured teacher after the RIF. *Massey*, 211 Mont. at 337, 683 P.2d at 1335. An internal board policy in

math teacher, and physical education teacher at Scobey High were each asked to teach social studies classes in addition to their regular subjects. Each of the teachers who took on social studies classes was certified and endorsed to teach social studies as well as their other assigned teaching subject. Radakovich, on the other hand, was certified *only* in social studies, and was therefore not qualified to fill any of the post-restructure positions.

favor of a physical education major could not, after all, circumvent state tenure protections.

¶29 In *Holmes*, a school board RIFed a principal qualified to teach in areas taught by non-tenured faculty because the principal did not posses actual paper certification from the state. While the principal obtained that certification days later, the school board continued the termination proceedings. It being undisputed that the principal was at all times qualified to teach the positions taught by non-tenured faculty, we held that "§ 20-4-203, MCA obligated [the board] to offer Holmes a comparable teaching position held by a nontenured teacher," noting that "the issuance of the certificate showing Holmes' endorsements only memorialized the qualifications that Holmes was known to possess" and that Holmes had nonetheless timely met the certification requirement. *Holmes*, 243 Mont. at 267, 792 P.2d at 13.

¶30 Finally, in *Harris*, a school board voted to eliminate a full-time physical education position, and dismissed the tenured teacher who had formerly held the position. *Harris*, 241 Mont. at 276, 786 P.2d at 1165. However, the school board then created a half-time P.E. position, which it, in turn, offered to a different teacher. We concluded the school board's actions were improper, holding that "to interpret the Board's action as eliminating an old position and creating a new position involves a hypertechnical distinction that could seriously threaten the value of tenure," *Harris*, 241 Mont. at 281, 786 P.2d at 1168, and affirmed an administrative decision requiring the school board to offer the teacher the half-time physical education position.

13

¶31 The key factor of the holdings in *Massey*, *Holmes*, and *Harris* is that the tenured teacher was qualified to teach the available position, but, in each case, the district gave the position to another, thereby violating the qualified teacher's tenure rights. These cases thus instruct that a tenured teacher must be retained over a non-tenured teacher when a position is open for which both teachers are qualified. If a board fails to do so, it violates § 20-4-203, MCA. Importantly, however, none of these cases addressed the application of tenure upon a district's decision to create or eliminate teaching positions in the first place—i.e., to restructure a district.[2] Indeed, neither has the Legislature addressed the role of tenure within this obviously difficult context.

¶32 It cannot be denied that a school board has the authority, and arguably the duty, to manage its school district in a financially responsible manner. *See Sorlie*, 205 Mont. at 29, 667 P.2d at 403. This authority includes the power to eliminate programs, activities, and personnel if and when such changes are necessary. *Sorlie*, 205 Mont. at 29, 667 P.2d at 403; *Massey*, 211 Mont. at 336, 683 P.2d at 1334. Therefore, while senior tenured teachers possess a "bumping right" for a position vis-à-vis junior tenured and non-tenured teachers, it does not follow therefrom that the right constrains a board, during a restructuring, to revise academic programs or re-align staff positions only in a manner

---

[2]While *Harris* did involve a change in one position—i.e., cutting a full-time physical education position to part-time—it did not involve the general restructuring at issue here, where new positions requiring multi-subject endorsements were created to absorb a reduction in force required by budget constraints.

14

which accommodates the seniority of existing tenured staff.[3]  Not only is there no authority for so applying tenure, such an application would substantially interfere with a district's undisputed right, and one of its most difficult duties, to restructure—i.e., to eliminate programs, activities, and personnel when financial circumstances dictate.  *See Sorlie*, 205 Mont. at 29, 667 P.2d at 403; *Massey*, 211 Mont. at 336, 683 P.2d at 1134.  Furthermore, it is clear that a teacher has no right to teach a position for which he or she is unqualified.  Section 20-4-201, MCA (1993).

¶33  Radakovich asserts, however, that because there were alternative restructuring options which would have resulted in dismissal of a non-tenured teacher instead of him, the District was bound to utilize such an alternative.  The Scobey School District elected to address the financial shortfall, in part, by cutting multiple full time teachers.  Included among those cuts was Radakovich's full-time social studies position at the high school, for which the District assigned three teachers endorsed in multiple subjects, including a junior tenured and non-tenured teacher, to teach his courses, in addition to teaching their other courses.

---

[3]This can be more clearly illustrated by a different scenario.  Imagine a school which employs ten teachers, each of whom is certified to teach only one subject, and no two teachers are certified in the same subject.  If budget constraints force the district to cut one teacher yet retain the core curricula, the district will be forced to dismiss two tenured teachers and hire one new, non-tenured teacher certified in multiple subjects. Though the outcome would result in the retention of a non-tenured teacher over two tenured teachers, the district would have no other choice but to dismiss the tenured teachers.  This is not the scenario here, as discussed infra, but is offered only to illustrate that Radakovich's tenure argument could logically lead to an impossibility.

¶34 Radakovich correctly notes that this action was not the only high school level cut that the District considered. There were other alternatives under which Radakovich could have been retained as a full-time, single subject-endorsed social studies teacher. However, as would be expected, there were negative consequences associated with each of those alternatives. One of the alternative staffing cuts considered by the District required the high school principal to undertake teaching duties in addition to his administrative duties, essentially reducing the full-time principal position to one deemed to be part-time. Another alternative would have required termination or reduction of foreign language classes.

¶35 Clearly, the other alternatives considered by the Board would have negatively impacted either the administrative operation of the school or the educational program which the school could offer, impacts which the Board was able to avoid by using teachers certified in multiple subjects. This well illustrates, not only the difficult choices faced by the Board, but the restrictions which would be forced upon districts if they were required to restructure exclusively on the basis of preserving senior tenure staff positions. The statutes and our cases simply do not mandate such an application of tenure, and to require such would contravene *Sorlie*, 205 Mont. at 29, 667 P.2d at 403, which recognized a district's authority to eliminate programs, activities, and personnel if and when such change is necessary.[4]

---

[4]It is worth noting that other states have significantly more detailed statutory schemes governing tenure. Those provisions detail not only how tenure is earned, as in Montana, but how a district must respect tenure after it is earned as well. *See e.g.,*

16

¶36 We note that other states allow retention of junior tenured and non-tenured teachers over senior tenured teachers in some situations. For instance, in *New Mexico State Bd. of Educ. v. Abeyta* (N.M. 1988), 751 P.2d 685, the New Mexico Supreme Court held that a district did not have to restructure or realign a district's teachers so as to ensure retention of the most senior teachers where doing so would seriously affect educational programs. *Abeyta*, 751 P.2d at 688. As noted by the court, there were serious consequences to elevating tenure above all other considerations during a reduction in force, a fact made evident by testimony from the superintendent in that case:

> We had a situation in the library [where] we have finally acquired the services of [Carson] an individual [who] is extremely energetic, has done an excellent job in our library over the two years that he has been there. That was one of the programs that was suffering drastically. We wanted to preserve that program and the only way we felt we could is by keeping that individual, in there. We considered the option that you're talking about which would have been to move John Sampson into that program.
>
> He was in that program four or five years ago at the middle school level [where] there is a lot of difference between programming library for middle school as opposed to high school. That consideration was given and we felt that we made a professional judgment that that would deteriorate the program.
>
> The other consideration was that John Sampson is in our social studies program at the high school. We consider him an exceptionally good social studies person. He has no interest in going into the library. We would have, in essence, ended up disturbing two extremely important programs if we took this approach. That is why we discounted that as an alternative.

California, Cal. Ed. Code §§ 44955 (Reduction in number of permanent and probationary employees) and 44956 (Rights of permanent employee terminated due to reduction in employees). Montana statutes do not offer this kind of direction.

*Abetya*, 751 P.2d at 687-88.  As a result of the consequences detailed by the superintendent, the court upheld the district's action retaining a junior teacher over a senior tenured teacher.[5]

¶37  Finally, as mentioned above, the District terminated Radakovich in part because he possessed only a single teaching endorsement, while the other teachers considered for dismissal but retained possessed endorsements in multiple subjects.  The District was able to maintain a full-time principal and preserve a stronger foreign language curriculum by utilizing staff members who possessed multiple endorsements.  As a matter of practical policy, this case illustrates that a teacher with multiple endorsements is especially valuable to a small rural district which needs teachers to teach in many subjects and to differing age groups.  In 1982, when deciding a case much like the one before us, the State Superintendent of Schools held similarly, and offered a prescient opinion about the need for teachers to be certified in multiple subjects:

> My commitment to give strong support to the concept of tenure remains. However, in this instance, Appellant is attempting to remain in a School District which has suffered a consistent drop in students for a number of years; at the same time the Appellant had not broadened his teaching certification to meet the obvious demand for teachers who have certification in many subjects.  No question was ever raised on Appellant's ability to teach or his intelligence.  Appellant must consider that if he intends to teach in rural areas, where enrollments are declining, he must broaden his teaching certification in order to be a more useful and valuable

---

[5] California allows retention of junior tenured teachers over senior tenured teachers if the junior teachers possess special skills and competence, even where both teachers are similarly state certified.  *See King v. Berkeley Unified School District* (Cal. 1979), 152 Cal. Rptr. 782; *Moreland Teachers Association v. Kurze* (Cal. 1980), 167 Cal. Rptr. 343, 346-47.

18

> employee in a situation where students, teachers and school budgets are under constant pressure.

*Holter v. Valley County School District No. 13* (OSPI No. 29-82) (1982), 1 Ed. Law 283.

It is clear that the unfortunate, but real need for small districts to respond to declining enrollments will require greater use of teachers with multiple endorsements in order to meet the challenge of providing a complete educational program. While, in accordance with our holdings, a district cannot displace a tenured teacher from a position for which that teacher is qualified in order to hire a multi-certified non-tenured teacher for that position, it is inevitable, as noted by the State Superintendent of Schools, that the financial challenges faced by districts in depopulating areas of the state will force them to restructure academic programs in a manner which places greater reliance upon multi-certified teachers. Our decision today is not directed by these practical observations, but we mention them only to demonstrate that, as currently enacted, the tenure statutes do not prohibit such restructuring.

¶38 The Scobey School District dismissed Radakovich because (1) the District restructured in a way that avoided negatively impacting the high school's administrative operation and educational program, and (2) Radakovich was endorsed in only one subject area, leaving him unqualified to teach any of the post-restructuring positions filled by the non-tenured and junior tenured teachers. Because nothing in § 20-4-203, MCA (1993), or the *Massey*, *Holmes*, and *Harris* line of cases precludes such considerations and action, we hold that the Scobey School District's dismissal of Radakovich as a tenured teacher

19

was not in violation of § 20-4-203, MCA (1993), and the tenure protections otherwise outlined in Montana case law.

¶39 It is important to make one final observation about tenure. While not implicated by the facts of this case, clearly a school board cannot, in order to avoid the provisions of the tenure statutes, use restructuring as a ruse to dismiss a specifically targeted employee or employees in bad faith. This was the essence of our holding in *Harris*, where we rejected the district's restructuring defense as a "hypertechnical distinction" of the district's right to restructure. *Harris*, 241 Mont. at 281, 786 P.2d at 1168. In contrast, the Scobey District's action here was not "hypertechnical," but a legitimate restructuring. Thus, it remains the law today that, "[a] teacher's tenure is a substantial, valuable and beneficial right, which cannot be taken away except for good cause." *Massey*, 211 Mont. at 336, 683 P.2d at 1334, citing *State v. District Court, Fergus County* (1954), 128 Mont. 353, 361, 275 P.2d 209, 214. It is self-evident that bad faith cannot constitute good cause.

### Was the District's use of the multiple endorsements RIF criterion objective and fairly applied?

¶40 The County Superintendent found the District's use of the "multiple endorsements" RIF criterion to be objective and fairly applied by the Scobey School Board. Although the District Court disagreed, after review, we conclude the County Superintendent was correct.

20

¶41     The District Court concluded that use of the "multiple endorsements" RIF criterion was improper based on its reading of the relevant collective bargaining agreement:

> While [the multiple endorsements criterion] may have presented more flexibility in shuffling staff, it was an element that was not part of the Collective Bargaining Agreement and a factor that was not identified to the teachers until less than one week before Radakovich's notification that the superintendent was recommending that he be terminated.

The District Court added:

> While the County Superintendent correctly found that Superintendent Hill determined staffing reductions were to be implemented based on seniority and evaluations, "where possible", endorsements and the programs offered by the district and a preference for multiple endorsements and the subsequent conclusion that those were proper and legitimate criteria is erroneous.   According to its own Collective Bargaining Agreement, seniority and evaluations alone were the criteria . . . .   The words "multiple endorsements" were unilaterally inserted by the superintendent.

While the District Court may have correctly determined that the RIF criteria used by the District was not properly grounded in the collective bargaining agreement, that issue was finally decided via binding arbitration in December of 1994.  There, the arbitrator denied Radakovich's grievance, concluding that the District had not violated the CBA when it terminated Radakovich using the multiple endorsements criterion.  *Radakovich I*, ¶ 9.

¶42     As we held in *Radakovich I*, "[a] district court's review of arbitration decisions is circumscribed by statute."  *Radakovich I*, ¶ 17.  Therefore, based upon the issue's final resolution in binding arbitration, we must conclude that the District Court's justification of its reversal of the County Superintendent's decision on the basis of the District's use of the "multiple endorsements" criterion was improper.

21

¶43 Further, it is clear that a "multiple endorsements" criterion is objective: a teacher either has them or does not have them. Here, that criterion was utilized fairly by the District, as every teacher retained to teach Radakovich's classes and cover his area of certification possessed multiple endorsements. For these reasons, as well as those above, we conclude that the use of the "multiple endorsements" criterion was objective and fairly applied.

¶44 The District Court's reversal of the decision of the Daniels County Superintendent of Schools was in error. We reverse and remand with instructions to reinstate the decision of the County Superintendent.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice James C. Nelson dissenting.

¶45   It concerns me that, while well intended, our decision creates a loophole in the teacher tenure act that will, henceforth, enable school boards to terminate tenured teachers in favor of less qualified and lower paid non-tenured teachers under the guise of using RIFs coupled with multiple endorsement criterion.

¶46   It is undisputed that the Scobey School District (the District) did not eliminate its social studies program and, thus, Radakovich's position. The social studies program continued on after Radakovich's termination—it was just taught, along with other courses, by other teachers, one of those being a non-tenured teacher (Tim Tharp). According to the findings of fact of the County Superintendent, the District could have terminated Tharp, assigned his duties to another teacher, and kept Radakovich in its employment. But that did not happen; rather, Radakovich was terminated.

¶47   In that regard, § 20-4-203, MCA, protects the tenure rights of teachers such as Radakovich, who have been offered and who have accepted a contract for the fourth consecutive year of employment. Tenure is a unique facet of teaching contracts designed to encourage academic freedom and to stimulate a vigorous, and sometimes controversial, discussion and debate in the pursuit of knowledge through continuing employment and economic security.

¶48   The multiple endorsement criterion constructed by the District, and now endorsed by this Court, is neither included in § 20-4-203, MCA, as a basis for terminating a

23

tenured teacher, nor was it a part of the collective bargaining agreement. Rather, this criterion was constructed from whole cloth by the District without input from the teachers. Instead of being an "objective" standard, the multiple endorsement criterion is little more than a facile, artificial gimmick that enables school districts to target specific tenured teachers for termination under the guise of a RIF, and which allows the district to retain less qualified and lower paid non-tenured teachers. *See Harris v. Cascade County School Dist. 6* (1990), 241 Mont. 274, 786 P.2d 1164, where we rejected the school board's decision to first eliminate a full-time P.E. position and, as a consequence, terminate the tenured teacher holding it, and then turn around and create a new half-time P.E. position for which the tenured teacher would be entitled to no consideration. We condemned this approach as "artificial" and involving a "hypertechnical distinction that could seriously threaten the value of tenure" and would "permit school boards to circumvent tenured rights . . . ." *Harris,* 241 Mont. at 281, 786 P.2d at 1168. The same conclusion appertains here.

¶49　I agree with Radakovich's argument, if § 20-4-203, MCA, means anything, it must mean that a tenured teacher has the right to require the school district to structure its RIFs, where possible, to retain tenured teachers and to RIF non-tenured teachers. This alternative was undisputedly available to the District here, and there is nothing in the County Superintendent's decision which explained why the District did not pursue this alternative.

¶50   Radakovich was tenured under § 20-4-203, MCA, and the collective bargaining agreement covering his employment provided that RIFs would be based on "seniority and/or personnel evaluations by the administrative staff." The County Superintendent found that there were alternatives of RIF which could have allowed teachers to continue to teach in their endorsed areas, retain Radakovich and terminate a non-tenured teacher. Section 20-4-203, MCA, and the collective bargaining agreement provide a preference for the retention of tenured teachers. Indeed, our case law confirms that tenured teachers have the right to "bump" non-tenured teachers. *Massey v. Argenbright* (1984), 211 Mont. 331, 337, 683 P.2d 1332, 1335 (school board's policy of hiring only those teachers who have majored in the subject does not supersede the Teacher Tenure Act and holding that the school board was obligated to offer Massey one of the comparable teaching positions held by a non-tenured teacher).

¶51   I would conclude that, here, the School Board refused to follow the law and the collective bargaining agreement. Unfortunately, our decision creates a loophole in the Teacher Tenure Act that will, henceforth, enable school boards to terminate tenured teachers in favor of less qualified and lower paid non-tenured teachers under the guise of RIFs coupled with multiple endorsement criterion. If these sorts of criterion are to hereafter be a part of the alternatives available to school districts conducting a RIF, then multiple endorsement criterion should be either included in the Teacher Tenure Act by the Legislature or bargained for as part of the collective bargaining process.

25

¶52 This Court has consistently held that teacher tenure is a valuable and substantial right that cannot be taken away except for good cause. *Yanzick v. School District No. 23* (1982), 196 Mont. 375, 391, 641 P.2d 431, 440 (citing *State ex rel. Saxtorph v. District Court, Fergus County* (1954), 128 Mont. 353, 361, 275 P.2d 209, 214). *See also Trustees, Missoula Cty S.D. 1 v. Anderson* (1988), 232 Mont. 501, 505, 757 P.2d 1315, 1318; *Baldridge v. Board of Trustees* (1997), 287 Mont. 53, 58, 951 P.2d 1343, 1346.

¶53 I fear that we have now substantially diminished that right and have opened a door for abuse.

¶54 I would affirm the trial court. I dissent from our failure to do so.

/S/ JAMES C. NELSON